## COMMISSIONER OF INTERNAL REVENUE *v.* DISSTON.

No. 589.   Argued April 24, 1945.—Decided June 4, 1945.

Mr. J. Louis Monarch, with whom Solicitor General Fahy, Assistant Attorney General Samuel O. Clark, Jr., Messrs. Sewall Key and Robert Koerner were on the brief, for petitioner.

Mr. Harold Evans for respondent.

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

This case, like *Fondren* v. *Commissioner,* 324 U. S. 18, presents questions whether certain gifts to minors are gifts of "future interests in property," within the meaning of the Revenue Act of 1932, c. 209, 47 Stat. 169.

In 1936 the respondent, William D. Disston, created a trust for the benefit of each of his five children, three of whom were then minors. The total of his gifts that year was $71,952. The Commissioner allowed an exemption of $5,000 on each gift for the children and on one to his wife. The taxpayer also was allowed the specific exemption of $40,000 provided by § 505 of the Revenue Act of 1932, as amended by § 301 (b) of the Revenue Act of 1935. The net gifts for 1936 accordingly were computed to be $1,952, upon which a tax was assessed and paid.

In 1937 the taxpayer added to the corpus of the trust securities valued at $25,000, of which $5,000 was allocated to each child's interest, including the three who were still minors. In 1938 he created another trust for his five children, the corpus consisting of undeveloped land worth $38,581. Two of the children still were minors.

The two trusts were identical in all respects now material. The principal was divided into five equal shares, one for each child. The trusts were of the spendthrift variety. All shares of the corpus and income were to be free from "anticipation, assignment, pledge, or obligations of beneficiaries," as well as execution or attachment. The shares of the minors alone are now involved. Hence the nature of the trust as applicable to them only need be considered.

The taxpayer's son, William L. Disston, was nineteen in 1936 when the first trust was created. As to his share the trustees were directed, in the Second Article, "to accumulate the net income therefrom for the benefit of William L. Disston until he reaches the age of twenty-one years, at which time to pay over to him all accumulated income,

and thereafter to pay over to him in not less than quarterly instalments the entire net income derived therefrom during his lifetime; provided, however, that upon his reaching the age of forty-five years one-half of the principal of his share shall be paid over to him free and discharged of all trusts; and upon further trust upon his death whether before or after reaching the age of forty-five years, to divide the principal of his share, or such portion thereof as is then held by the Trustees, among his then living descendants . . . in such amounts as he shall by will appoint, and in default of such appointment, to divide the same equally per stirpes," with provision for division among the taxpayer's other children and their descendants if no descendant of the beneficiary should then be living. The Article contains a proviso that if the taxpayer's son should die before reaching forty-five, the son may appoint to his spouse for a period no longer than her life not more than one-half of the income from his share of the corpus.

Identical provisions were made for the two minor daughters, except that they were to obtain only one-third of the corpus at age forty-five and could appoint to their spouses only one-third of the income.

A subsequent paragraph provided that the trustees should hold the minors' shares during their respective minorities, "and during such time shall apply such income therefrom as may be necessary for the education, comfort and support of the respective minors, and shall accumulate for each minor until he or she reaches the age of twenty-one years, all income not so needed. The foregoing clause shall apply to minor children of the Settlor irrespective of the direction heretofore set forth to accumulate all income for such minors."

In addition the Fourth Article, which defined the trustees' powers, authorized them "to apply the income to which any beneficiary shall be entitled hereunder for the

maintenance, education, and support of such beneficiary should he or she by reason of age, illness, or any other cause in the opinion of the Trustees be incapable of dispensing it. Payment by the Trustees to the parent of any minor . . . shall be sufficient acquittance and discharge to the Trustees for such payment or payments."

Finally, the trustees were authorized to invade the corpus in an emergency: "To expend out of the share of principal from which any beneficiary may be receiving income under this deed of trust such sums as Trustees may consider to be for the best interests of such beneficiaries during illness or emergency of any kind; provided, however, that in no case shall such expenditures of principal exceed in the aggregate ten percent (10%) of the value of such share of principal . . ."

In operation the 1938 trust of unimproved realty had produced no net income to the time the case came before the Tax Court. Most of the 1936 income of the first trust, $288 for each minor, was paid to the mother of the beneficiaries. In 1937 partial payments of income, $94 per minor child, were made. The beneficiaries' mother returned other checks to the corporate trustee in 1937, and one of the individual trustees, an adult child of the taxpayer, directed the corporate trustee thereafter to accumulate the income of the minors. No further payments of income were made to any child prior to his becoming of age.

In determining the taxpayer's gift tax for 1937 the Commissioner disallowed three $5,000 exclusions from the net gifts for that year on the ground that the gifts to the three minor children were gifts of future interests. For 1938 the Commissioner disallowed two $5,000 exclusions on the ground that the gifts made that year to the two children who were still minors were gifts of future interests.

In computing the gift tax for 1937 and 1938 it was necessary for the Commissioner to compute the aggregate

sum of the net gifts for the preceding years.[1] The Commissioner, in determining the net gifts made for this purpose by the 1936 trust, adjusted the exclusions which he had allowed in 1936 to the extent of $5,000 for each of the three minors. The period of limitations for assessment and collection of 1936 gift taxes had run.[2]

The Tax Court upheld the Commissioner, but the Court of Appeals reversed, holding no future interests arose as a result of the gifts to the minors. Consequently it was unnecessary for the Court of Appeals to consider whether the statute of limitations barred readjustment of the net gift figure for 1936 or simply barred collection of any further gift taxes for that year.

The guiding principles were outlined recently in *Fondren* v. *Commissioner*, 324 U. S. 18. Gifts of "future interests," within the meaning of § 504 (b), to any person are not excluded from the computation of net gifts to the extent of the first $5,000 in value, as are present interests. Treasury Regulations 79 (1936 ed.), Article 11, defines "future interests" as interests "limited to commence in use, possession, or enjoyment at some future date or time. . . ." The definition has been approved repeatedly. Cf. *Ryerson* v. *United States*, 312 U. S. 405; *United States* v. *Pelzer*, 312 U. S. 399; *Fondren* v. *Commissioner*, 324 U. S. 18.

---

[1] The formula results in a progressive rate of gift taxation, not limited to progression within the calendar year, but extending over the life of the donor. The computation formula is set forth in § 502 of the Revenue Act of 1932:

"The tax for each calendar year shall be an amount equal to the excess of—

"(1) a tax, computed in accordance with the Rate Schedule hereinafter set forth, on the aggregate sum of the net gifts for such calendar year and for each of the preceding calendar years, over

"(2) a tax, computed in accordance with the Rate Schedule, on the aggregate sum of the net gifts for each of the preceding calendar years."

[2] See § 517 (a) of the Revenue Act of 1932.

Clearly the corpus of the trusts falls within the definition. Distribution to William L. Disston, for example, has no relation to his reaching his majority, which he has now attained. He must live to attain the age of forty-five to enable him to receive one-half of the corpus. If he does not reach that age, his estate receives no part of the principal. The recipients are an undetermined group designated in the trust provision, among whom the beneficiary has a limited power of appointment. At the time of the gifts in 1936–1938 it was unknown who in fact would receive this one-half interest. Obviously the enjoyment was postponed.

As to the other half in William L. Disston's share, it likewise was unknown who would enjoy the corpus. One thing only was known, that the named child could not enjoy it. He would continue to receive the income from it for his life, but the principal was not given to him. The possibility that in an emergency the trustees might invade the corpus to the extent of ten per cent for his benefit did not confer a present interest in that part of the principal. The emergency by definition was extraordinary, something that might or might not occur at some indefinite future time. No present, certain and continuous enjoyment was contemplated, nor did it materialize. What has been said of the one minor is true of the others.

The question must be determined whether the trusts provided for a present interest in the trust income, or some definable portion of it. The first direction of each trust is to accumulate the net income until the minor reaches twenty-one. If that were all, it would again be clear that a future interest was created by the postponement of enjoyment. A later paragraph directs the trustees, however, "to apply . . . such income therefrom as may be necessary for the education, comfort and support of the respective minors" and to accumulate the remainder.

Respondent urges that this case differs from the *Fondren* case in that there the trust instrument showed that it was not contemplated that the income would be needed for education and support; and the trustee was directed to accumulate the income unless no other funds were available for such purposes, whereas here there is nothing in the trust instrument to indicate such an intent. In fact, respondent argues, the trust instrument means that the trustees *must* apply an amount of the income sufficient to provide for education, comfort and support, even though the minor is amply cared for by his parents, his own efforts, or other sources of revenue, citing 1 Scott, Trusts, § 128.4 and other authorities. When faced with the fact that the history of the trust's administration shows a practical construction by the trustees that support money need not automatically be paid over, respondent urges that the terms of the trust and the nature of the interest granted cannot be varied by what was subsequently done in administration.

The language of the trust instruments directs that the income be accumulated during minority. The subsequent provision for payments for maintenance and support may be said to indicate a departure from the policy of accumulation only when necessary, in the reasonable discretion of the trustees. If that is the appropriate interpretation of the trust instruments, then little difference from the *Fondren* case is involved. Even in its practical working, the trustees did not find the necessary prerequisites for a steady application of all or any ascertainable part of the income for education, support and maintenance.

But, even though the trustees were under a duty to apply the income for support, irrespective of outside sources of revenue, there is always the question how much, if any, of the income can actually be applied for the permitted purposes. The existence of a duty so to apply the income gives no clue to the amount that will be

needed for that purpose, or the requirements for maintenance, education and support that were foreseeable at the time the gifts were made. In the absence of some indication from the face of the trust or surrounding circumstances that a steady flow of some ascertainable portion of income to the minor would be required, there is no basis for a conclusion that there is a gift of anything other than for the future. The taxpayer claiming the exclusion must assume the burden of showing that the value of what he claims is other than a future interest. Cf. *New Colonial Co.* v. *Helvering,* 292 U. S. 435. That burden has not been satisfied in this case.

The question remains whether the adjustment of net gifts for 1936 in computing 1937 and 1938 tax liability is barred by the statute of limitations. As has been noted, § 502 requires utilization of "the aggregate sum of the net gifts for each of the preceding calendar years" in the formula for computing gift tax liability. Section 517 (a) does not purport to bar adjustment of the net gift figure for that purpose, but simply prevents assessment and collection of a tax for a year barred by the statute. The statute does not purport to preclude an examination into events of prior years for the purpose of correctly determining gift tax liability for years which are still open. The Tax Court and Treasury Regulations have construed § 517 (a) as requiring determination of the true and correct aggregate of net gifts for previous years.[3] The construction is in accord with the statutory language.

Accordingly, the judgment is

*Reversed.*

---

[3] The pertinent Treasury Regulations 79, Article 5 provides: ". . . By the words 'aggregate sum of the net gifts for each of the preceding calendar years' (aside from the amount of the specific exemption deductible) is meant the true and correct aggregate of such net gifts, not necessarily that returned for such years and in respect to which tax was paid. . . ." See also *Winterbotham* v. *Commissioner,* 46 B. T. A. 972; *Wallerstein* v. *Commissioner,* 2 T. C. 542; *Roberts* v. *Commissioner,* 2 T. C. 679.