Charles W. Nichols v. Commissioner. Adelaide B. Nichols v. Commissioner.
Charles W. Nichols v. Commissioner
Docket Nos. 12324, 12333.
United States Tax Court
1948 Tax Ct. Memo LEXIS 238; 7 T.C.M. (CCH) 134; T.C.M. (RIA) 48032; March 3, 1948
*238 In 1943 petitioners conveyed certain common stock to a trustee as gifts for the use and benefit of their six grandchildren. The trust indenture established a separate fund for each beneficiary, the income of which was to be applied to the tuition and education of that beneficiary in such amounts as the trustee should deem necessary or proper. Any income of each fund not so applied for the particular beneficiary could be applied toward the educational requirements of his brother or sister, the other trust beneficiaries, in whatever proportions the trustee might consider desirable and without any duty to maintain equality among the several beneficiaries. Remaining income was to be accumulated for distribution, together with the principal, when the respective beneficiaries attained majority. Held, that these gifts were gifts of future interests, for which no exclusions are allowable under section 1003(b)(3), I.R.C.
Harold Rosenblum, Esq., 217 Broadway, New York, N. Y., for the petitioners. Sheldon V. Ekman, Esq., for the respondent. ARUNDELL
Memorandum Opinion ARUNDELL, Judge: These consolidated proceedings involve gift tax deficiencies for 1943 in the amount of $4,320 against each of the petitioners. The only issue is whether the petitioners are entitled to the statutory exclusions of $3,000 for each donee in connection with certain gifts in trust for the benefit of their grandchildren. [The Facts] The facts are not in dispute. Petitioners, husband and wife, are residents of Pleasantdale, New Jersey, with business offices in New York City. They filed separate 1943 gift tax returns on March 15, 1944, with the collector of internal revenue for the second district of New York. On December 22, 1943, petitioners jointly created gifts in trust for the benefit of their six grandchildren, all of whom were then enrolled in private schools. The Corn Exchange Bank & Trust Co. became *240 trustee. The trust corpus consisted of 504 shares of common stock of Allied Chemical & Dye Corp., a New York corporation. Of these, Charles W. Nichols contributed 254 shares and Adelaide B. Nichols, 250 shares. The value of each share was $148.50, of Charles' contribution, $37,719, of Adelaide's contribution, $37,125, and of the total corpus, $74,844. Under the terms of the trust instrument, the corpus was divided into six separate trust funds, one for each of the petitioners' six grandchildren, each fund comprising 84 shares of the value of $12,474. The names and birth dates of the beneficiaries were: Ralph N. Coxhead, August 16, 1928; Kathleen Coxhead, November 19, 1932; Peter C. Coxhead, May 28, 1937; Joan Nichols, November 8, 1935; Charles W. Nichols, 3d, August 25, 1937; and David H. Nichols, October 12, 1938. Under the FIRST paragraph of the trust instrument the trustee was empowered "to apply so much of the net income as the Trustee shall deem necessary or proper to the tuition and education of the grandchild of the Grantors for whom such separate trust fund is established, and to apply any income which the Trustee may consider not needed for the tuition and education of *241 the grandchild for whom such separate trust fund is established to the tution and education of either or both of the other two grandchildren in the 'Coxhead group' in respect of the trusts established for the benefit of the Coxhead grandchildren, or to either or both of the other two grandchildren in the 'Nichols group' in respect of the trusts established for the benefit of the Nichols grandchildren, such application to be made in whatever proportions the Trustee may consider desirable, it being expressly understood that inequality of such application may be desirable because of the varying ages and educational requirements of those to be provided for; and the Trustee shall accumulate for the benefit of the grandchild of the Grantors for whom such separate trust fund is established all income not applied either for his or her benefit or applied for the benefit of either or both of the other two grandchildren in the same group. * * *" At the age of 21 each grandchild was to receive the principal and accumulated income of his separate trust fund. In the event of his death prior to that time, distribution of the corpus and income was to be made to his living children, if any; if none, *242 then to his brothers and sisters then living and the children of any who may have died; otherwise, to his next of kin. Paragraph SECOND provided: "The Trustee may apply the income of any one of the trusts established hereunder to the payment of any bills for tuition or education which have been approved in writing by either parent of the infant for whose benefit it is intended to apply the income, or by his or her guardian, or by the person with whom such infant resides; and the application of income and the accumulation of the same as herein authorized may be made by the Trustee without any duty or responsibility on its part to inquire into the amount of property possessed by either parent of such infant or into the amount of property owned by the infant." The remaining paragraphs of the trust instrument provided largely for the general administrative powers and duties of the trustee, trustee commissions, and further contributions to corpus. On January 7, 1944, petitioners made additional gifts in trust of 498 shares of common stock of Allied Chemical & Dye Corp. to their six grandchildren under the identical trust instrument, 83 shares to each grandchild. These gifts, not *243 in issue here, brought the total in each separate trust fund to 167 shares. Dividend income at $6 per share, totaling $1,002 for each of the six trust funds, was received in each of the years 1944, 1945, and 1946. In those years the trustee made educational disbursements out of trust income as follows: Year
Ralph
Kathleen
Peter
Joan
Charles
David
1944
$ 753.69
$355.83
$303.25
$ 767.05
$562.15
$511.30
1945
621.09
621.09
621.09
1,833.01
578.73
542.85
1946
1,132.63
777.02
763.65
948.78
715.62
670.60
The 1944 disbursements for Ralph included $115.06 of the trust income set up for Kathleen and $167.69 of that for Peter; and the 1946 disbursements for Ralph included $114.08 of the trust income set up for Kathleen and $127.45 of that for Peter. In all three years the disbursements for Joan included portions of the trust income set up for Charles and for David, in the following amounts: 1944, $30.32 each; 1945, $450.99 and $463.50, respectively; 1946, $53.70 and $64.74, respectively. The 1945 disbursements for Charles included $31.26 of the income of the trust set up for David. Except for trustee commissions, income tax, and *244 the above educational payments, no other disbursements were charged against the income of the six trust funds from 1944 to 1946. The year-end balances of unexpended trust income were as follows: Date
Ralph
Kathleen
Peter
Joan
Charles
David
Dec. 31, 1944
$470.94
$470.94
$470.94
$235.47
$349.41
$400.26
Dec. 31, 1945
706.41
706.41
706.41
235.47
235.47
235.47
Dec. 31, 1946
706.41
706.41
706.41
347.01
408.03
442.01
In their 1943 gift tax returns Charles W. Nichols and Adelaide B. Nichols reported their gifts of December 22, 1943, valued at $37,719 and $37,125, respectively. Each claimed a $3,000 exclusion for each of the six donee grandchildren, or a total exclusion of $18,000 in each return. Both had exhausted their specific exemptions by gifts in prior years. On the basis of the claimed exclusions, Charles W. Nichols and Adelaide B. Nichols computed and paid gift tax in the respective amounts of $4,732.56 and $4,590. The respondent disallowed all the exclusions claimed and determined the deficiencies accordingly. [Opinion] Section 1003(b)(3)[1] of the Code, while allowing exclusions of $3,000 for each donee in the case *245 of gifts of present interests, denies the exclusions in the case of gifts of future interests; and "future interests" are those which are "limited to commence in use, possession, or enjoyment at some future date or time." See Regs. 108, sec. 86.11, many times approved by this and other courts. Petitioners contend that their gifts were of present interests because they were intended to provide the tuition and educational costs of their grandchildren, all of whom were in private schools at the time the trusts were established. They go to considerable length in their brief to distinguish their case from Fondren v. Commissioner, 324 U.S. 18. But whatever doubt survived the Fondren case as to whether gifts such as those here involved are future interests within the meaning of the statute was put to rest by the later decision *246 of the Supreme Court in Commissioner v. Disston, 325 U.S. 442. In the Disston case the trustees were directed, during the minority of the beneficiaries, to apply such of the trust income as might be necessary for the education, comfort, and support of the respective minors and to accumulate for each minor until he reached majority, all income not so needed. Here the trustee was "to apply so much of the net income as the Trustee shall deem necessary or proper to the tuition and education of the" beneficiaries and to accumulate the rest until their majority. Furthermore, in setting up the trusts, the petitioners here empowered the trustee to allocate trust income among the grandchildren in each of the two family groups, in view of "the varying ages and educational requirements of those to be provided for." Any income which the trustee might consider not needed for the tuition and education of the particular grandchild for whose benefit the trust was established could be applied by the trustee to the education of that donee's brother or sister "in whatever proportions the Trustee may consider desirable." No duty was imposed on the trustee either to equalize the payments *247 of income to or on behalf of the donees or to maintain ultimate equality among the separate trust funds. And, any income which the trustee did not deem necessary or proper to apply toward tuition and education was to be accumulated by the trustee for distribution, together with the corpus, at the termination of the trusts. In these circumstances, we cannot agree with the petitioners that the trust instrument left the trustee with no discretion in the matter of the application of the trust income. Actually, in the administration of the trusts during the years 1944 to 1946 the trustee on numerous occasions drew upon the income accounts of certain of the beneficiaries to meet the needs of other beneficiaries. With this power in the trustee to take from one and give to another, in whatever proportions the trustee considered desirable, we do not see how it can be said that any one beneficiary had an immediate right to any definite or ascertainable part of the trust income, or how it would be possible to compute the value of any beneficiary's interest in the income, present or future. Cf. Helvering v. Blair, 121 Fed. (2d) 945. Assuming, however, that each beneficiary had *248 an enforceable right to whatever income he might need for his educational purposes - the view most favorable to the petitioners - still the record affords no showing as to how much each beneficiary would need. All we have is the stipulation that the six grandchildren were enrolled in private schools at the date of the gifts and the trust accounts, showing disbursements in varying amounts during the first three years of administration; but these give little if any clue to the requirements of each beneficiary that were foreseeable at the time the gifts were made. As in the Disston case, there is no positive showing "that a steady, flow of some ascertainable portion of income to the minor would be required." The burden was on the petitioners to prove the value of what they claimed were present interests. On the authority of the above decisions we hold that the gifts here involved were of future interests, and that the petitioners are entitled to no exclusions. Decisions will be entered for the respondent. Footnotes
1. (3) Gifts after 1942. - In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1943 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year↩