Raymond J. Funkhouser, et al. [1] v. Commissioner. Funkhouser v. Commissioner
Docket Nos. 67616-67632.
United States Tax Court
T.C. Memo 1958-222; 1958 Tax Ct. Memo LEXIS 6; 17 T.C.M. (CCH) 1094; T.C.M. (RIA) 58222; December 31, 1958
*6 Donor made gifts to trusts where the trustee of each trust was required to distribute the income annually to the beneficiary and, also, the trustee had full discretion to distribute all or part of the corpus prior to the expiration of the trust in the event specified needs should exist of the beneficiary or any member of the beneficiary's immediate family. Held, such gifts of a present right to trust income could not be valued for gift tax purposes because of the trustee's discretion to disburse corpus. Held, further, respondent's determinatons denying exclusions based on the right to receive income from the gifts to the trusts are correct within the meaning of section 1003(b)(3), 1939 Code. John S. McDaniel, Jr., Esq., for the petitioners. William Schwerdtfeger, Esq., for *7 the respondent. HARRON has determined deficiencies in the gift tax of Raymond J. Funkhouser for the years 1952 and 1953 in the amounts of $9,411.43, and $2,013.34, respectively. The only question for decision is whether exclusions of $3,000, each, are allowable under section 1003(b), 1939 Code, for gifts made to trusts in the years 1948, 1950, 1951, 1952, and 1953. Findings of Fact Raymond J. Funkhouser resided in Charlestown, West Virginia prior to June 1952, when he became a resident of Centerville, Maryland. For the years 1948, 1950, and 1951, he filed gift tax returns with the collector of internal revenue for the district of West Virginia; and for the years 1952 and 1953, he filed gift tax returns with the district director of internal revenue for the district of Maryland. As of June 21, 1953, there were living 5 children of Raymond J. Funkhouser, hereinafter sometimes called the donor, and 12 grandchildren. Funkhouser created 17 separate trusts for these children and grandchildren; 14 trusts were created on December 17, 1948; one trust was created on October 9, 1950; another, on October 25, 1951; and another, on October 1, 1953. The provisions of each trust *8 indenture were substantially identical, there being differences with respect to the name of the beneficiary of each trust and the number of shares of stock transferred initially to each trust. In each indenture, the donor reserved the right to transfer additional property to the trust. The relevant provisions of the indentures are set forth hereinafter. Funkhouser made gifts to the various trusts of shares of stock in 1948, 1950, 1951, 1952, and 1953. The stock which was given to the trusts was capital stock of Victor Products Corporation and first preferred stock of Funkhouser Industries, Inc. The following schedule sets forth the name of the income beneficiary (who was the initial or primary beneficiary) of each trust, the date of birth of such beneficiary, the relationship to the donor (i.e., son or grandson, daughter or granddaughter), the date on which each trust was created, and the number by which each trust is designated: Date of
Date of Birth
Trust No.
Trust
Primary Beneficiary
Relationship
of
Beneficiary
1.
1-A
12/17/48
Avis Fithian
Daughter
3/ 8/12
2.
5-E
12/17/48
R. J. Funkhouser
Son
2/19/14
3.
10-J
12/17/48
D. F. Steeley
Daughter
10/16/17
4.
13-M
12/17/48
G. F. Smith *
Daughter
9/16/31
5.
14-N
12/17/48
J. F. Ashley *
Daughter
9/16/32
6.
2-B
12/17/48
Sandra Shupp
Granddaughter
11/24/32
7.
6-F
12/17/48
C. Funkhouser
Granddaughter
10/16/35
8.
7-G
12/17/48
R. J. Funkhouser
Grandson
5/29/39
9.
11-K
12/17/48
H. L. Rice, Jr.
Grandson
10/10/39
10.
8-H
12/17/48
A. C. Funkhouser
Granddaughter
1/ 3/42
11.
3-C
12/17/48
W. T. Fithian
Grandson
12/ 1/42
12.
4-D
12/17/48
Avis Fithian
Granddaughter
3/ 3/45
13.
9-I
12/17/48
P. S. Funkhouser
Granddaughter
7/24/45
14.
12-L
12/17/48
D. S. Steeley
Granddaughter
12/19/45
15.
16-P
10/ 9/50
Wendy Wysong
Granddaughter
1/26/50
16.
18-R
10/25/51
R. J. Funkhouser
Grandson
3/ 1/51
17.
21-U
10/ 1/53
T. M. Evans
Grandson
6/21/53
*9 All of the Funkhouser trusts are irrevocable; they are to terminate 21 years after the death of the survivor of the donor's children, or upon the death of the last surviving descendant of the donor, if said death shall occur prior thereto, and the trust fund as then constituted shall be paid and distributed to the person (or persons) who was entitled to receive trust income immediately prior to the termination of the trust. The fifth article of each trust provides for the distribution of income and principal. During the term of a trust, the trustee is to pay all of the net income each year to the primary and initial beneficiary during his or her life, and, after the death of such beneficiary to his or her descendants, if any, or, if none, then to others. Paragraph 3 of the fifth article provides as follows: "3. Notwithstanding anything herein to the contrary provided, the Trustees are authorized in their absolute discretion from time to time to pay over or to expend on behalf of any person who is an income recipient hereunder at the time, such sum or sums from the principal *10 of the Trust as they shall deem necessary or advisable to provide for any illness or any emergency affecting such person who is an income recipient hereunder at the time or any member of his or her immediate family, or to provide for the care, maintenance, support or education of such person or any member of his or her immediate family." When the first 14 trusts were created, Funkhouser made gifts of shares of the capital stock of Victor Products Corporation on December 17, 1948. The stock had a value of $5 per share at the time of the gifts. The block of stock given to each trust was more than 1,000 shares; for example, 1,331 shares having a value of $6,655 were given to trust 1-A for the benefit of Avis Funkhouser Fithian. The aggregate amount of stock given to the 14 trusts on December 17, 1948, was 15,980 shares having a value of $79,900. Funkhouser and his wife, Flora, elected to have their total gifts in 1948 considered as having been made one-half by each of them pursuant to section 1000(f) of the 1939 Code, and, therefore, Funkhouser reported in his 1948 gift tax return one-half of the value of all gifts made in 1948, including the aforesaid gifts to the trusts. He reported *11 the gifts to the trusts as having a value of $79,900. Other gifts, which are not involved here, were reported at a value of $10,655.82. One-half, $45,277.91, of total gifts of $90,555.82, were reported by Funkhouser in his gift tax return for 1948. The portions of the specific exemption of $30,000, which were claimed in the 1948 gift tax return by him as applied to gifts made in years preceding 1948, aggregated $23,389.50. The Commissioner has determined that no exclusions were allowable for the 1948 gifts to the trusts since they were gifts of future interests within the meaning of section 1003(b) of the 1939 Code. With respect to the 1948 gifts to the trusts, the donor claimed 14 exclusions for gifts of present interests under section 1003(b). On October 9, 1950, Funkhouser made a gift of 1,100 shares of capital stock of Victor Products Corporation having a value $3of per share, or a total value of $3,300, to the new trust he created on the same date for the benefit of his granddaughter Wendy W. Wysong; and on December 30, 1950, he made gifts to the 15 trusts then in existence of 435 shares of first preferred stock of Funkhouser Industries, Inc., having a par value of $100 per *12 share, or a total value of $43,500. Thus, the total value of gifts to trusts in 1950 amounted to $46,800. He gave 30 shares of preferred stock of Funkhouser Industries to each of the 14 trusts created in 1948, and 15 shares to the trust for Wendy Wysong. The Commissioner has determined that no exclusions were allowable for the 1950 gifts to the trusts since they were gifts of future interests within the meaning of section 1003(b). The donor claimed 15 exclusions for the 1950 gifts to the trusts as gifts of present interests. On October 25, 1951, Funkhouser made gifts of 1,100 shares of stock of Victor Products Corporation having a value of $4.25 per share, or a total value of $4,675, and of 30 shares of preferred stock of Funkhouser Industries having a par value of $100 per share, or a total value of $3,000, to the trust he created on that date for the benefit of his grandson, Raymond J. Funkhouser, II. On October 25, 1951, the donor made a gift of an addition to the principal of the Wendy Wysong trust of 15 shares of the preferred stock of Funkhouser Industries having a total value of $1,500. On December 21, 1951, the donor made further additions to the principal of each of the *13 14 trusts created in 1948 by transferring to them a total of 420 shares of the preferred stock of Funkhouser Industries having a total value of $42,000. He gave 30 shares of the preferred stock to each trust which had a value of $3,000. The total value of all of the stock transferred to all of the trusts during 1951 amounted to $51,175. The Commissioner determined that no exclusions were allowable for the 1951 gifts to the trusts since they were gifts of future interests within the meaning of section 1003(b). The donor claimed 16 exclusions for 16 gifts of present interests. During 1952, the donor made gifts to each of the 16 trusts then in existence, as additions to principal, of 30 shares of the preferred stock of Funkhouser Industries, or a total of 480 shares, which had a total value of $48,000. The value of the stock given to each trust was $3,000. The gifts to each of the trusts for Wendy W. Wysong and Raymond J. Funkhouser, II, were made on January 2, 1952, and the gifts to each of the 14 trusts created in 1948 were made on December 24, 1952. The Commissioner has determined that no exclusions are allowable for the 1952 gifts to the trusts since they were gifts of future *14 interests within the meaning of section 1003(b). The donor claimed 16 exclusions for 16 gifts of present interests in his gift tax return for 1952. On October 1, 1953, the donor made a gift of 1,100 shares of the capital stock of Victor Products Corporation having a value of $4.50 per share, or a total value of $4,950, to the new trust he created on that date for the benefit of his grandson, Treflyn M. Evans. On January 2, 1953, he made a gift of 30 shares, each, of the preferred stock of Funkhouser Industries to the trusts for the benefit of Wendy W. Wysong and Raymond J. Funkhouser, II. Each gift of stock had a value of $3,000, and both had a value of $6,000. The total value of the 1953 gifts to the trusts was $10,950. The Commissioner has determined that the 1953 gifts to the trusts are not entitled to the allowance of any exclusion because they were gifts of future interests within the meaning of section 1003(b). The donor claimed 3 exclusions for 3 gifts of present interests in his 1953 gift tax return. Notices of a deficiency in the gift tax liability for the year 1952 of the donor, Raymond J. Funkhouser, were mailed on March 4, 1957. On that date the period of limitation *15 for the assessment of a deficiency against the donor, 3 years, had expired, section 1016(a); but the period of limitation for assessment of the liability of a transferee had not expired, section 1025(b). The trustee of each of the 17 trusts received a deficiency notice, as a transferee of property of Raymond J. Funkhouser, for gift tax for 1952; the determination of the liability of each trustee as a transferee was limited to $3,000 inasmuch as the value of the assets which each trustee received in 1952 amounted to $3,000. The notice of a deficiency in Funkhouser's liability for gift tax for 1953 was mailed on March 4, 1957; the notice was timely. The determination of a deficiency in gift tax for 1953 was made against Funkhouser. The stipulated facts are found as stipulated and the stipulation together with all of the attached exhibits are incorporated herein by this reference. Opinion HARRON, Judge: The question is whether under the terms of the trusts $3,000 exclusions are allowable under section 1003(b)(3) [2] for each gift to a trust in each of the years 1948, 1950, 1951, 1952, and 1953 for the purpose of computing the net amount of gifts made by the donor in each year. *16 Although determination of the donor's gift tax for only the years 1952 and 1953 is involved here, the gifts to the trusts in the preceding years must be considered because increases in the taxable amount of the gifts made in the earlier years, which will result from disallowance of exclusions in computing the net amount of gifts made in the preceding years, will tend to increase the rate of gift tax applicable to 1952 and 1953. In the computation of the gift tax for 1952 and 1953, it is necessary to ascertain the amounts of the annual exclusions for the prior years and the amounts of the specific, lifetime exemption used in the prior years. If the question is decided for the petitioners there will not be any deficiencies in gift tax for 1952 and 1953. Petitioners *17 contend that a portion of each gift was of a present interest, namely, the gift to each beneficiary of an interest in trust income; petitioners agree that the interests in principal constituted a future interest within the meaning of section 1003(b)(3). Respondent agrees that an immediate and unqualified right of a beneficiary to receive trust income for life, or for a fixed period, represents a present interest, Commissioner v. Brandegee, 123 Fed. (2d) 58, but it is his position that because of the provisions of paragraph 3 of the fifth article of the trust indentures, the income beneficiary of each trust could not have an absolute and immediate right to income for life, since the corpus producing the income could be distributed at any time, in whole or in part, thereby cutting off income. Respondent contends, further, that even if the right to receive trust income is a present interest under the instant trusts, there is no method of valuing such interest, or right, because the period during which the right may exist cannot be determined; the period of existence of the right could be terminated at any time, even before a single distribution of income could be made. *18 Respondent cites as authority for his position the following: Evans v. Commissioner, 198 Fed. (2d) 435, affirming 17 T.C. 206; Herrmann's Estate v. Commissioner, 235 Fed. (2d) 440, affirming a Memorandum Opinion of this Court filed July 27, 1955 [14 TCM 845]; Jennie Brody, 19 T.C. 126; and Fred J. LaFortune, 29 T.C. 479, on appeal to the Court of Appeals for the 10th Circuit. It is provided in paragraph 3 of the fifth article of each trust agreement that the trustee may, in his absolute discretion, from time to time, make distribution from trust principal, in such amount as the trustee deems necessary or advisable for the following purposes: (1) To provide for the support, maintenance, care, or education of (a) the primary beneficiary, or (b) of any member of his or her immediate family. (2) To provide for any illness or other emergency affecting (a) the primary beneficiary, or (b) any member of his immediate family. The purposes for which a trustee may make payments out of trust principal are broad and include the stated needs of not only the primary beneficiary but also of others, namely, any member *19 of the primary beneficiary's immediate family. Under the provisions of paragraph 3, the trustee of each trust could in his sole and uncontrolled discretion, if the stated needs arose, diminish or wipe out the interest of the primary beneficiary in income of the trust by distributing part or all of the income-producing corpus. Under such trust provision, there is no known method for valuing the interest in trust income of the primary beneficiary, and petitioner has not found a method. The value of the interest in income cannot be determined in view of the power of the trustee to terminate that interest by distributing the corpus of the trust at any time, and such distributions of corpus can be made for the benefit of individuals other than the primary beneficiary. A taxpayer claiming an exclusion under section 1003(b)(3) must show not only the right to the exclusion but the amount of it. It was stated in Commissioner v. Disston, 325 U.S. 442, that, "The taxpayer claiming the exclusion must assume the burden of showing that the value of what he claims is other than a future interest." See, also, Kniep v. Commissioner, 172 Fed. (2d) 755, 757, affirming 9 T.C. 943. *20 What was said in Herrmann's Estate v. Commissioner, supra, at pp. 444 and 445, applies here, namely, "Since it cannot be known, at the creation of the trust, what part, if any, of the trust principal will be distributed, or when, if ever, any principal distributions will be made, there is no basis or formula by which the future interest can be valued, and the taxpayers are unable to meet the burden imposed on them to establish a value." See, also, Evans v. Commissioner, supra; and Margaret A. C. Riter, 3 T.C. 301. The facts in these cases are not essentially different from those in Herrmann's Estate, Jennie Brody, and Fred J. LaFortune. It is, therefore, held that the respondent's determinations denying exclusions based upon the right to receive income under the gifts to the trusts which were made in 1948, 1950, 1951, 1952, and 1953 are correct. Petitioners cite Estate of Albert E. Nettleton, 4 T.C. 987, and that case has been considered. Petitioner's reliance on that case is misplaced; the rule therein stated is not applicable to the question presented here. Decisions will be entered for the respondent. Footnotes
1. Consolidated herewith are the following cases: Docket No. 67617, Trust for Avis F. Fithian, et al.; Docket No. 67618, Trust for Sandra E. Shupp, et al.; Docket No. 67619, Trust for William T. Fithian, III, et al.; Docket No. 67620, Trust for Avis F. Fithian, et al.; Docket No. 67621, Trust for Robert J. Funkhouser, et al.; Docket No. 67622, Trust for Carol R. Funkhouser, et al.; Docket No. 67623, Trust for Robert J. Funkhouser, Jr., et al.: Docket No. 67624, Trust for Ann C. Funkhouser, et al.; Docket No. 67625, Trust for Pamela S. Funkhouser, et al.; Docket No. 67626, Trust for Dolores F. Steeley, et al.; Docket No. 67627, Trust for Herbert LeRoy Rice, Jr., et al.; Docket No. 67628, Trust for Dolores S. Steeley, et al.; Docket No. 67629, Trust for Geraldine Lee Funkhouser Smith, et al.; Docket No. 67630, Trust for Jacqueline Funkhouser Evans Ashley, et al.; Docket No. 67631, Trust for Wendy W. Wysong, et al.; and Docket No. 67632, Trust for Raymond J. Funkhouser, II, et al.↩
*. On December 17, 1948, Geraldine was Geraldine F. Cain, and Jacqueline was Jacqueline F. Wysong.↩
2. SEC. 1003. NET GIFTS. * * *
(b) Exclusions From Gifts. - * * *
(3) Gifts After 1942. - In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1943 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.↩