George FISCHER, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 13312.

United States Court of Appeals Third Circuit.

Argued Dec. 8, 1960.

Decided April 13, 1961.

Meyer Sugarman, Passaic, N. J. (Carl F. Nitto, Passaic, N. J., on the brief), for petitioner.

Michael I. Smith, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent.

Before BIGGS, Chief Judge, and GOODRICH, Circuit Judge, and FORMAN, Senior Circuit Judge.

FORMAN, Senior Circuit Judge.

The sole issue raised on this appeal is whether gifts in trust made by petitioner, George Fischer, were gifts of a present interest which will support a claim for three annual statutory exclusions of $3,000 each under § 1003(b) (3) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 1003(b) (3). The Tax Court rejected the claimed exclusions.

The material facts as stipulated by the parties and as found by the Tax Court may be summarized as follows:

In 1954, Fischer transferred two parcels of real property as a gift in trust for the benefit of each of his three adult daughters. The property was located in Staten Island, New York. The "net income" from the trust property was to be paid in equal quarterly shares to the three daughters as long as each lived and thereafter to their respective issue, or in the absence of issue to the surviving daughters or their issue. The corpus of the trust was to be distributed equally to the daughters 15 years from the date of the trust, but if any daughter died before that distribution her share was to be held in trust for her surviving issue until the latter attained 21 years of age.

The trust provided that Fischer should have no power to revoke, alter or amend the trust instrument or exercise any power over the trust estate. Nevertheless Fischer and the trustees entered into an agreement December 2, 1954, in which the term "net income" as used in the original trust instrument, was more clearly defined. The definition in the new agreement was "such cash net income as equals the excess of rents and other income to the trust corpus over and above disbursement and operating expenses and monies paid for amortization of any mortgages involved." Fischer also reserved the right to transfer additional property to the trust.

The trustees were given absolute discretion and authority to purchase, sell or exchange trust assets; to make investments which did not produce income or hold trust assets uninvested for any period of time; to charge any expenses or costs against principal or income to the extent that they could so do legally; to borrow such sums of money as they deemed advisable for any purpose, including the refinancing of real estate improvements; to pledge any trust property as security; and to improve, alter or rebuild any of the real property of the trust estate.

The trust indenture further provided that the "net income" of the trust was not to be paid to any beneficiary if she became bankrupt or insolvent or had alienated her interest by any means; in any such event that beneficiary's interest terminated and her former share of the income was to be used thereafter by the trustees in the amounts and as they deemed advisable for her support and maintenance or for the support and

maintenance of her husband and children and any excess was to be distributed pro rata among the other beneficiaries.

Fischer reported in his gift tax return for 1954 the sum of $157,403.43 as the value on August 26, 1954, of the gifts in trust. He subtracted $9,000 as annual exclusions and $30,000 as a specific exemption, leaving a net taxable gift of $118,403.43. Attached to the gift tax return was a copy of the contract of sale dated June, 1954 according to which Fischer agreed to purchase the real property later transferred by him to the trust in question. The purchase price was $508,750 with $20,000 payable on the signing of the contract and $143,750 payable on the delivery of the deed. One parcel of property was to be subject to a first mortgage of $345,000 to be secured by the seller prior to sale. The mortgage was to bear interest at 4½ per cent per annum and was to be amortized by quarterly payments of $6,460 each to be applied first to interest and the balance to principal. The sellers represented that the rentals were as shown on a separate schedule which stated that the total annual rental was $80,100 consisting of rents ranging from $90 to $140 on 60 apartments and $10 each for 35 garages. The sellers further represented that the annual expenses were as follows:

"Taxes ..................... $13,633.15
Fuel ..................... 4,599.97
Water and Sewerage ...... 1,048.00
Electricity ............... 669.54
Insurance ............... 1,203.98
Superintendent ........... 3,420.00
    Apartment and $185"

Title to the property passed to Fischer on September 1, 1954.

The Commissioner subsequently disallowed the claimed annual exclusions, explaining that none was allowable under the deed of trust, and determined a gift tax deficiency against the taxpayer in the amount of $2,025. The Tax Court held that the beneficiaries were given future interests in the trust corpus and that the value of their present interests in the income therefrom "could not be estimated from the record with reasonable certainty." It found, therefore, that the Commissioner acted properly in denying the annual exclusions claimed by the taxpayer.

Section 1003(b)(3) of the Internal Revenue Code of 1939 (26 U.S.C. § 1003, 1952 ed.) provides:

"(b) Exclusions from gifts"

\*　\*　\*　\*　\*　\*

"(3) *Gifts after 1942.* In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1943 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year."

■ ■ A future interest, for gift tax purposes, is one which is "limited to commence in use, possession, or enjoyment at some future date or time." Commissioner of Internal Revenue v. Disston, 1945, 325 U.S. 442, 65 S.Ct. 1328, 1330, 89 L.Ed. 1720; Evans v. Commissioner, 3 Cir., 1952, 198 F.2d 435; Treasury Regulation 108, Sec. 86.11 (Promulgated under 1939 Code). In the instant case, the daughters were given no immediate right to the trust corpus. Hence it is clear that their interest as to the corpus was a gift of a future rather than of a present interest. Accordingly no part of the value of the trust corpus may be excluded for gift tax purposes. Fondren v. Commissioner, 1945, 324 U.S. 18, 65 S. Ct. 499, 89 L.Ed. 668; Evans v. Commissioner, supra; Funkhouser's Trusts v. Commissioner, 4 Cir., 1960, 275 F.2d 245. It does not appear that Fischer contends otherwise.

■ The Tax Court held and the Government concedes that the rights of Fischer's three daughters to receive the income from the trust were gifts of present interests. However, the Government insists that those rights may not be the subject of an annual exclusion since their value, separate and apart from the gifts

of future interests cannot be determined with reasonable certainty. Since the statutory exclusion provided by Section 1003(b) (3) applies to the first $3,000 of a gift to each beneficiary, it is axiomatic that the interests transferred must have a determinable value. Mertens' Federal Gift & Estate Taxation § 38.08. (1959). Thus a gift of a present interest has not qualified for an annual exclusion where the value of the interest was not reasonably certain. Funkhouser's Trusts v. Commissioner, supra; La Fortune v. Commissioner, 10 Cir., 1958, 263 F.2d 186; Herrmann's Estate v. Commissioner, 5 Cir., 1956, 235 F.2d 440; Evans v. Commissioner, supra; Commissioner v. Brandegee, 1 Cir., 1941, 123 F.2d 58; Vogel v. United States, D.C.D.Mass.1941, 42 F.Supp. 103. Compare Hugh McK. Jones, 1957, 29 T.C. 200. Moreover, the determination of the Commissioner is presumptively correct. Herrmann's Estate v. Commissioner, supra; Kniep v. Commissioner, 8 Cir., 1949, 172 F.2d 755. And the taxpayer must not only show his right to the claimed exclusion but also the amount of it. Kniep v. Commissioner, supra. As was said in Commissioner of Internal Revenue v. Disston, 325 U.S. 442, 449, 65 S.Ct. 1328, 1331, 89 L.Ed. 1720:

" * * * In the absence of some indication from the face of the trust or surrounding circumstances that a steady flow of some ascertainable portion of income to the minor would be required, there is no basis for a conclusion that there is a gift of anything other than for the future. The taxpayer claiming the exclusion must assume the burden of showing that the value of what he claims is other than a future interest. * *"

In the case at bar the present interest consisted of rights to receive the "net income" from the trust corpus consisting of an apartment house. As noted before that term was defined in an agreement entered into by the settlor, Fischer, and the trustees as "such net income as equals the excess of rents and other income to the trust corpus over and above disbursements and operating expenses and monies paid for amortization of any mortgages involved."

When the trust was created the operating expenses totalled $24,574.64 a year according to the representations of the seller, and the property had been sold subject to a mortgage which was to be amortized by quarterly payments of $6,460, or a total of $25,840 a year. Thus the operating expenses and amortization totalled $50,414.64 a year. The only evidence as to the gross income was the "Schedule of Rents" which was annexed to a rider attached to the contract of sale between Fischer and the seller of the property. The "Schedule of Rents" set forth the total rents as amounting to $80,100. However, as the Tax Court noted:

" * * * The schedule would lead one to believe that the amounts mentioned are the rental asked for each of the 60 apartments and 35 garages. The record contains no evidence of the extent to which the apartments and the garages were actually rented at the time of the transfer. Nor is there any other evidence of the probable income from the property."

It therefore concluded:

" * * * The record does not justify a finding that the income from the property would exceed those expenditures or the amount, if any, by which the probable income might be expected to exceed the probable expenditures * * *."

Fischer demurs to this finding contending that the schedule of rents shows an annual income of $80,100 and that the operating expenses were $50,000 leaving a balance of $30,100, ample to justify the $9,000 exclusion three times. He further argues that it is unrealistic to doubt the schedule of rentals or to discount it by a possible vacancy factor since the very closing of the contract would yield a reasonable inference that the representations contained therein had been meticulously checked. The Tax Court was not in error in exacting a

higher standard of proof than that proffered by the taxpayer. His challenge must show that the Tax Court was clearly erroneous in finding that there had been a failure to prove the gross income actually being received from the property. We cannot say that he has sustained his burden here. Commissioner v. Thompson, 3 Cir., 1955, 222 F.2d 893; Kemper v. Commissioner, 8 Cir., 1959, 269 F.2d 184.

■ However, as the respondent argues, even if some other figure of gross income could properly be used as a basis for computing the net income of the trust the valuation of the present interests here involved still could not be made with reasonable certainty. In addition to the operating expenses "disbursements" had to be deducted from gross income to determine the net income. These would include not only normal repairs, but also any improvements. Both repairs and improvements would seem to be an important factor here since Fischer took the property "as is". The trust indenture expressly empowered the trustees to "improve, make structural changes to, alter or rebuild any of the existing buildings or to remove any old buildings and erect new buildings on any real property which constitutes part or all of the trust estate." Significantly the operating expenses which totalled $24,574.64 a year according to the representations of the seller did not include any item for repairs or improvements.

In addition to the factors noted above the trust indenture empowered the trustees to sell at private or public auction all real or personal property belonging to the trust, on such terms and conditions as they deemed advisable; to acquire additional property with trust assets, whether income producing or not, and to hold uninvested trust property for any period of time; and to borrow additional sums of money for any purpose whatsoever, pledging as security therefor any personal or real property constituting the trust estate. The trustees were given the power "to charge any and all expenses, costs, fees, taxes or other sums of money against the whole or any part or share of the property held thereunder, and *against principal or income,* as they shall determine and insofar as it may be legal to do so."

Moreover, Fischer retained the right to transfer additional property to the trust which could be subject to encumbrances thus further obligating the trust estate. Thus Fischer and the trustees had the power to divert the trust income from the beneficiaries for other purposes. Under such circumstances the present interests could not be valued with reasonable certainty.

Fischer suggests that we

"* * * as the Court did in the case of Cohn v. Commissioner, 226 Fed.2d 5 [22] (C.C.A.9, 1959), ascertain that the findings of the Tax Court as expressed in its memorandum opinion are not based on facts contained in the record or reasonable inferences therefrom."

In Cohn the Commissioner's determination of an income tax deficiency had been shown to be invalid. Therefore the court held that the presumption as to the correctness of the Commissioner's determination was out of the case. Under those circumstances the court said that it was incumbent upon the Commissioner and not the taxpayer to assume the burden of proving whether any deficiency exists and the amount thereof. Hence the court held it was improper for the Tax Court in making its redetermination of the tax deficiency to accept the maximum possible gross income figure as the actual figure only because the taxpayer failed to show a lesser amount. The case at bar is clearly distinguishable. Fischer has not shown the Commissioner's determination to be arbitrary or erroneous. He has not met his burden of showing that he was entitled to the statutory exclusion. The Tax Court's judgment upholding the Commissioner is fully supported by the facts and will be affirmed.