**MERCANTILE–SAFE DEPOSIT AND TRUST COMPANY and Jay Jefferson Miller, Surviving Executors of the Estate of Ellen A. Schoeneman, Mercantile-Safe Deposit and Trust Company, Josepha S. Miller, Jay Jefferson Miller and Edward A. Halle, Executors of the Estate of Ansel Schoeneman, Jay Jefferson Miller and Josepha S. Miller**

**v.**

**UNITED STATES of America.**

**Civ. No. 19789.**

United States District Court, D. Maryland.

April 13, 1970.

Shale D. Stiller and Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for plaintiffs.

Johnnie M. Walters, Asst. Atty. Gen., Donald R. Anderson and Thomas R. Wechter, Attys., Civil Tax Division, Dept. of Justice, Washington, D. C., and Stephen H. Sachs, U. S. Atty., and Alan B. Lipson, Asst. U. S. Atty., Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

This is a refund suit brought by the executors of the estate of Ellen A. Schoeneman, the executors of the estate of Ansel Schoeneman, and Jay Jefferson Miller and Josepha S. Miller individually, against the United States for the recovery of gift taxes and assessed interest for the years 1963 and 1964.

The question presented is whether in computing their gift tax liabilities, the annual exclusion of $3,000 per donee was available to the taxpayers with respect to their transfers in trust in 1963 and 1964. The answer turns on whether the donees' interests in the trusts were present interests, susceptible of valuation at the time the gifts were made.[1]

On December 17, 1963, Ansel Schoeneman and Ellen A. Schoeneman, husband and wife, and Josepha S. Miller, their daughter, executed two trust indentures, one with Mercantile-Safe Deposit and Trust Company, Jay Jefferson Miller, II, and Anne W. Miller, as trustees, and the other with Mercantile-Safe Deposit and Trust Company, Edward A. Halle and Ellen Halle, as trustees. Under the terms of the trust instruments, nine separate irrevocable trusts were created for the nine great-grandchildren of Ansel Schoeneman and Ellen Schoeneman, all of whom were minors when the instruments were executed and during the taxable years involved.[2] The net income from each trust was to be paid to the specified beneficiary throughout his life. Upon the death of the beneficiary the corpus was to pass to the issue of Josepha S. Miller named in the beneficiary's will.[3]

During 1963 and 1964, both Ansel Schoeneman and Josepha S. Miller made gifts to the trusts in the form of cash and common stocks listed on the New York Stock Exchange. Ellen A. Schoeneman, the spouse of Ansel Schoeneman,[4] and Jay Jefferson Miller, the spouse of Josepha S. Miller, consented to having the gifts considered as made one-half by each spouse, pursuant to section 2513 of the Internal Revenue Code of 1954. In gift tax returns timely filed for 1963 and for 1964, each of the taxpayers sought an annual exclusion of $3,000 per donee for such years, claiming that the life estates of the nine great-grandchildren were present interests, susceptible of valuation. The District Director of Internal Revenue disallowed the annual exclusions in full; the taxpayers paid the proposed deficiencies, and filed timely claims for refund. No statutory notices of disallowance were issued, and taxpayers instituted this action on August 14, 1968.

Both sides agree that § 2503(c) of the 1954 Code does not apply, and that the case is controlled by § 2503(b) of the

---

1. § 2503(b), I.R.C. 1954 provides:
   "Exclusions from Gifts.—In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1955 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for purposes of subsection (a), be included in the total amount of gifts made during such year. Where there has been a transfer to any person of a present interest in property, the possibility that such interest may be diminished by the exercise of a power shall be disregarded in applying this subsection, if no part of such interest will at any time pass to any other person."
   § 25.2503-3(b), T.R. on Gift Tax (36 C.F.R.) provides:
   "An unrestricted right to the immediate use, possession, or enjoyment of property or the income from property (such as a life estate or term certain) is a present interest in property. An exclusion is allowable with respect to a gift of such an interest (but not in excess of the value of the interest). If a donee has received a present interest in property, the possibility that such interest may be diminished by the transfer of a greater interest in the same property to the donee through the exercise of a power is disregarded in computing the value of the present interest, to the extent that no part of such interest will at any time pass to any other person (see example (4) of paragraph (c) of this section). For an exception to the rule disallowing an exclusion for gifts of future interests in the case of certain gifts to minors, see § 25.2503-4."

2. All of them were grandchildren of Josepha S. Miller.

3. The beneficiary also had the right to appoint the spouse of any such issue to receive an equitable life estate; and if the beneficiary did not exercise his testamentary power of appointment, the corpus of the trust property passed to other descendants of Josepha S. Miller.

4. In 1964 the executors of her estate gave the consent.

Code and § 25.2503–3 of the Regulations, which are set out in note 1.

Taxpayers concede that the remainder interests in the several trusts created by the trust instruments are not present interests, within the meaning of those sections. See Commissioner v. Disston, 325 U.S. 442, 65 S.Ct. 1328, 89 L.Ed. 1720 (1945). But taxpayers contend that the income (life) interest of the specified beneficiary in each of the nine trusts is a present interest, susceptible of valuation at the time the gift was made. The Government takes the position that the donees' interests are neither present interests nor susceptible of valuation.

The terms of the nine separate trusts are identical, except for the named beneficiary. Each provides that all income must be paid to the beneficiary of the separate trust. During the lifetime of the beneficiary, the Trustees are permitted to invade corpus for the benefit of the life beneficiary and are instructed that "the welfare of such beneficiary shall be the primary concern of the Trustees". No income or principal can be paid to anyone other than the income beneficiary during his lifetime. The trusts contain no power permitting the Trustees to accumulate income.

The Government relies upon the broad powers given to the Trustees to support its argument that the income (life) interests are not present interests having an ascertainable value. The Government cited the following powers in its brief: (1) the power to make any distribution in cash or in kind at a value determined by the Trustees; (2) the power to invest in such securities and property as the Trustees may think advantageous to the particular trust, and the power to invest, reinvest, change investments in such stocks, bonds, shares, securities, including investment trusts or any kind of real or personal property, wasting or non-wasting, productive or non-productive, as may result in a future increase in the value or yield of any trust; (3) the power to receive and retain, without diversi-

fication, any property, if they consider it in the interests of the trust; (4) the power to make loans to or to borrow any sums from any person; (5) the power to apportion receipts and expenses between income and principal; (6) the power to take out and to pay premiums on any life insurance upon the life of any beneficiary, or upon the life of any parent, or spouse, or issue or spouse of any issue of such beneficiary; (7) the power to employ custodians, investment counsel, attorneys and other agents, and to delegate the Trustees' duties, rights and powers to them; (8) the power to improve, develop, subdivide, construct, alter, demolish, repair, partition, or dedicate to public use real estate, and to set aside from income any reserves which they may deem necessary in connection with any real estate which becomes a part of the trust; (9) the power to buy, sell, assign, transfer, convey, exchange, divide, invest, reinvest, mortgage, pledge, borrow, lend, lease, release, deed and grant options.

Such powers are commonly given to trustees by knowledgeable attorneys in Maryland. Most of them are included in Rule V77(a), Maryland Rules of Procedure, Subtitle V Fiduciary, adopted on February 2, 1970, by the Court of Appeals of Maryland, which apply to all trustees, whether or not such powers are included in the will or trust agreement.[5]

In Gilmore v. Commissioner, 213 F.2d 520 (6 Cir. 1954), the Court said:

"The Tax Court considered that the provision granting to the trustees general investment powers, including the power to invest in such investments, whether producing income or not, as the trustees in their discretion should deem proper and for the best interests of the donee, resulted in making the donee's rights to income contingent on the trustees' willingness to invest the corpus in such manner that income would be derived therefrom, and that such a contingent right was not a right

5. See Rule V77(a) (2), (3), (4), (7), (10), (11) and (15).

presently to use, possess, or enjoy the property. But the trust gives the donee the absolute right to all income. The fact that there may not be income during a year is not a contingency imposed by the donor. It is the right of a donee to the income, rather than the accident of whether there is income at any given time, that is the criterion of present interest. That the corpus of a trust may consist of non-interest bearing notes, payable at a future date, does not prevent a gift from being one of present interest." 213 F.2d at 521, 522.

In Rosen v. C. I. R., 397 F.2d 245 (4 Cir. 1968), the Commissioner conceded that certain income interests were present interests, notwithstanding that the corpora of the trusts consisted of stock which had never paid a dividend; that the trustees had the power to sell the assets in the trust and to reinvest in non-income producing assets, and that the trustees were all family members and family lawyers and accountants. The Court approved the use of actuarial tables to determine the value of the present worth of the life estate. The Court said:

" * * * The cases cited to us by the government generally stand for the proposition that the 'ascertainable value' test is not met (and hence the exclusion not available) where some impediment, power or contingency stands in the way of actual realization of income. See 5 Mertens, Federal Gift and Estate Taxation § 38.08 (1959). This is not a case involving discretion to withhold income, C. I. R. v. Disston, supra, nor one where the trustee may destroy the right to receive income by exercise of a power to invade the corpus, Funkhouser's Trusts v. C. I. R., 275 F.2d 245 (4th Cir. 1959), or by exercise of a power to terminate the trust, La Fortune v. C. I. R., 263 F.2d 186 (10th Cir. 1958)." 397 F.2d at 247, 248.

Powers generally similar to those in our case were considered in Brown v. Commissioner of Internal Revenue, 30 T.C. 831 (1958), which involved Maryland law. The Court said:

" * * * To hold that the trustee has the power under an 'absolute discretion clause' to cut off all the rights of the life tenant would confer upon the trustee the power to destroy one of the primary purposes of the trust, i. e., the purpose to benefit the life tenant. An attempted destruction of one of the purposes of the trust would constitute an abuse of discretion which the courts would control. Here, the beneficiaries were life tenants and entitled to the income for life."

After discussing Doty v. Commissioner, 148 F.2d 503 (1 Cir. 1945), in which the Court of Appeals held that classifying ordinary dividends as corpus would be so arbitrary that an equity court would hold it to be an abuse of discretion, the Tax Court said:

"In Maryland a trustee's discretionary power is subject to control of the courts to prevent an abuse of discretion. Offutt v. Offutt, 204 Md. 101, 102 A.2d 554, 558 (1954). Restatement, Trusts, sec. 187 which was cited with approval by the court in Offutt v. Offutt, supra, states (comment d) that among the factors which may be relevant in determining whether a trustee is guilty of an abuse of discretion (in exercising or failing to exercise) are: '(2) the purposes of the trust; (3) the nature of the power; (4) the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged; * * *'

"A careful reading of the whole indenture of trust indicates that the intention of the settlor was to give the income beneficiaries a substantial present interest and nowhere does it appear that she intended to favor the

remainderman to their (income beneficiaries') detriment. It does not appear that the trustees' discretionary powers were granted for any other purpose than to facilitate the administration of the trust. It seems clear to us that the income beneficiaries received a substantial present interest under the indenture of trust and that the trustees could not properly exercise their powers in such a manner as to deprive the income beneficiaries of their present interest. To do so would constitute an abuse of discretion which the Maryland courts would prevent.

"Respondent also contends that if the interests in question are present interests the exclusions are nevertheless unallowable because the trustees were not required to pay over a definitely ascertainable amount of income thereby rendering the interests incapable of valuation.

"We think respondent's contention is without merit. His contention in this respect is based on precisely the same argument that was advanced in support of his contention that the interests were future interests, viz, that the trustees could allocate all of the receipts and accretions of the trust estate to the principal. As we have stated previously, the trustees could do no such thing without violating their trust. * * *" 30 T.C. at 836, 837.

The Commissioner acquiesced in the *Brown* decision. 1959-1 Cum.Bull. 3.

The Government relies particularly on two cases, Fischer v. Commissioner of Internal Revenue, 288 F.2d 574 (3 Cir. 1961), and Van Den Wymelenberg v. United States, 397 F.2d 443 (7 Cir. 1968). In *Fischer*, the corpus of the trust consisted of two parcels of real property, and "net income" was defined as "such net income as equals the excess of rents and other income to the trust corpus over and above disbursements and operating expenses and monies paid for amortization of any mortgages involved." The Tax Court held and the Government conceded that the right of Fischer's three daughters to receive the income from the trusts were gifts of present interests. But the Tax Court held that since the record did "not justify a finding that the income from the property would exceed those expenditures or the amount, if any, by which the probable income might be expected to exceed the probable expenditures", the taxpayer had not met his burden of proof and therefore the value of the life estate was not ascertainable with reasonable certainty.[6] The Third Circuit affirmed, noting various provisions which would permit the trustees to divert the trust income from the beneficiaries.

*Van Den Wymelenberg*, supra, also involved a real estate trust; the corpus consisted of property worth $132,500 subject to an $82,500 mortgage. The Court held that the value of the life estate was not ascertainable because of certain broad administrative powers, the exercise of which was subject to "no ascertainable standard". The Court referred particularly to "the power to sell, exchange or alter the trust assets, the power to allocate receipts to principal or income, and the power to apportion expenditures to principal or income". The Court did not discuss any state law which would govern the trustees.

This Court concludes that *Fischer* and *Van Den Wymelenberg* do not control this case for several reasons. The powers of a trustee are not exercised in vacuo, but in the context of a particular instrument. The instruments in our case direct that all the income from a particular trust be paid to the life beneficiary of that trust. No income

---

6. In the case at bar, the dividends from the listed securities are readily ascertainable.

or principal can be paid to anyone other than the income beneficiary during his lifetime. The trusts contain no power permitting the Trustees to accumulate income. During the lifetime of each life beneficiary, the Trustees are specifically directed that "the welfare of such beneficiary shall be the primary concern of the Trustees", and the Trustees may invade principal for the benefit of that beneficiary and for no other purpose. Such instructions will be enforced by the Maryland courts. The nature and scheme of the trusts with which we are dealing are different from the real estate trusts in *Fischer* and *Van Den Wymelenberg*. The certainty of income to the life beneficiary is clearly greater than in those cases; it is even greater than it was in *Rosen*, the Fourth Circuit case where the exclusion was allowed. Although the powers given to these Trustees are very broad, most of them are procedural; broad powers are the rule rather than the exception in Maryland; and an abuse of discretion in the allocation of receipts between income and principal would be corrected by the Courts. Brown v. Commissioner of Internal Revenue, supra; Offutt v. Offutt, 204 Md. 101, 102 A.2d 554 (1954). The teaching of *Rosen, Gilmore* and *Brown* leads to the conclusion that the income (life) interests in these trusts are present interests susceptible of valuation by the use of appropriate tables.[7]

Counsel should agree upon a judgment order giving effect to this conclusion.

7. This conclusion would be strengthened by the admission into evidence of the wills of Ansel Schoeneman and Ellen A. Schoeneman and other trust instruments executed by them, prepared by the same lawyers, which were admitted in evidence subject to exception. The difference between the provisions of those instruments and the ones we are dealing with in this case are striking. In all of the other instruments the trustees are given the power to accumulate income, the power to "spray" income among a class of people, and the power to invade the principal of the trust for the benefit of a class of people. None of those provisions

appear in the instruments involved in this case. The Court believes that the instruments with which we are dealing in this case are clear and unambiguous, and, therefore, the other instruments are not admissible and have not been considered by the Court in reaching its decision. Commissioner of Internal Revenue v. McIlvaine, 78 F.2d 787 (7 Cir. 1935); Norris v. Jones, 31 F.Supp. 463 (W.D. Okl.1940), aff'd 122 F.2d 6 (10 Cir. 1941). If the instruments with which we are dealing were held to be ambiguous, the intention of the donors could be clarified by a comparison of those instruments with the others.