## ELISE McK. MORGAN, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1793–62, 1794–62, 3038–62. Filed September 21, 1964.

*Richard E. Thigpen* and *Richard E. Thigpen, Jr.*, for the petitioners.

*John L. Ridenour III*, for the respondent.

BRUCE, *Judge:* The respondent determined deficiencies in gift tax and income tax for the calendar years 1958 and 1959 as follows:

| Gift tax | Elise McK. Morgan, docket No. 1793-62 | Edwin Morgan, docket No. 1794-62 |
|---|---|---|
| 1958 | $18,623.59 | $18,947.39 |
| 1959 | 20,522.39 | 20,550.45 |

| Income tax | Edwin and Elise McK. Morgan, docket No. 3038-62 |
|---|---|
| 1958 | $40,036.15 |
| 1959 | 26,339,33 |

The cases were consolidated. The principal issue arises from the disallowance of deductions and exclusions claimed on the gift tax and income tax returns for contributions of a 20-year income interest to a trust for charitable, religious, and educational purposes.

A second issue, arising in the computation of the specific exemption allowable, involves the question whether a gift to a trust created in 1955 was the gift of a future interest. This issue is before the Court for the purpose of determining the amount of specific exemption available and consequently the amount of the gift tax liability of petitioner Elise McK. Morgan for the year 1958. See sec. 2504, I.R.C.

---

[1] Proceedings of the following petitioners are consolidated herewith: Edwin Morgan, docket No. 1794–62; and Edwin and Elise McK. Morgan, docket No. 3038–62.

1954, and Gift Tax Regs., sec. 25.2504–1(d). Some of the facts are stipulated.

FINDINGS OF FACT

The stipulations of facts and the exhibits attached thereto are incorporated herein by this reference.

Petitioners are husband and wife who reside in Laurinburg, N.C. Their gift tax returns and joint income tax returns for the years 1958 and 1959 were filed with the district director of internal revenue at Greensboro, N.C.

Edinburgh Corp., hereinafter referred to as Edinburgh, was incorporated under the laws of North Carolina in 1939 and is engaged in the business of manufacturing and selling textile and related products at Laurinburg, N.C.

Upon the organization of Edinburgh, $50,000 in common stock was issued. On January 14, 1955, $450,000 additional common stock was issued as a stock dividend, and $450,000 of retained earnings was capitalized. On December 20, 1958, Edinburgh's authorized capital was increased to $1 million, divided into 4,000 shares of 5-percent noncumulative preferred stock, 600 shares of class A common stock with voting rights, and 5,400 shares of class B common stock without voting rights.

On December 30, 1958, as a result of the recapitalization and in order to provide for the exchange of old stock for new stock, $300,000 was transferred from the surplus account to the capital account, increasing the capital to $800,000.

On December 30, 1958, new stock was issued in exchange for the old stock as follows:

| | Percent | 5-percent preferred shares | Common shares | |
| --- | --- | --- | --- | --- |
| | | | Voting class A | Nonvoting class B |
| Edwin Morgan | 80 | 3,200 | 320 | 2,880 |
| Elise McK. Morgan | 19 | 760 | 76 | 684 |
| J. C. McKinnon | 1 | 40 | 4 | 36 |
| | | 4,000 | 400 | 3,600 |

In the fiscal years ended August 31 in 1949 through 1959 Edinburgh paid the following dividends:

| Year | Amount per share | Total amount |
| --- | --- | --- |
| 1952 | $6 | $2,850 (preferred). |
| 1952 | 30 | 15,000 (common). |
| 1953 | 6 | 2,850 (preferred). |
| 1954 | 6 | 2,850 (preferred). |
| 1955 | 3 | 1,425 (preferred—retired). |
| 1955 | 100 | 50,000 (common). |

Edinburgh paid no dividends in the fiscal years ended in 1956 through 1959.

Edinburgh had net earnings, after income taxes, for the taxable years ended August 31, as follows:

| | |
|---|---:|
| 1952 | $39, 353. 29 |
| 1953 | 49, 516. 20 |
| 1954 | 64, 868. 00 |
| 1955 | 82, 857. 86 |
| 1956 | [1](15, 769. 13) |
| 1957 | 9, 118. 02 |
| 1958 | 57, 216. 96 |
| 1959 | 32, 456. 97 |

[1] Loss.

Edinburgh had accumulated surplus in the following amounts at the end of the fiscal years ended in 1949 through 1959:

| Year ended Aug. 31— | *Total surplus* |
|---|---:|
| 1949 | $483, 797. 56 |
| 1950 | 537, 764. 13 |
| 1951 | 581, 991. 24 |
| 1952 | 603, 494. 53 |
| 1953 | 650, 160. 73 |
| 1954 | 712, 178. 73 |
| 1955 | 293, 611. 59 |
| 1956 | 277, 842. 46 |
| 1957 | 294, 805. 38 |
| 1958 | 352, 022. 34 |
| 1959 | 85, 064. 79 |

The directors of Edinburgh are Edwin Morgan and Elise McK. Morgan, the petitioners, James L. Morgan and M. Morrison Morgan, sons of the petitioners, and J. C. McKinnon.

In May 1949 a trust known as the Morgan Trust for Charity, Religion and Education was created by a trust instrument between Edwin Morgan, as grantor, and Edwin Morgan, Elise McKinnon Morgan, James L. Morgan, and M. Morrison Morgan, as trustees. This trust, hereinafter referred to as the Morgan Charitable Trust, is an organization exempt under section 101(6) of the Internal Revenue Code of 1939 and section 501(c)(3) of the Internal Revenue Code of 1954 from income tax. Contributions to this trust are deductible for income tax purposes to the extent provided in section 170, and for gift tax purposes as provided in section 2522(a)(2), of the Internal Revenue Code of 1954.

On July 1, 1955, Elise McKinnon Morgan created an irrevocable trust with property consisting of interests in a partnership. James L. Morgan is the trustee. The trust agreement provides, in part:

The Trustee shall collect, receive, and receipt for all income, gains and profits from and upon the trust property, and after deducting all taxes, fees and

expenses paid or incurred in the administration of the trust, shall apply and pay over the net income and also the principal of the trust estate in the following manner:

(a) One-third (⅓) of the net income shall be paid in annual or more frequent installments, preferably once every three months, to Bessie Morgan Gibson so long as she lives.

(b) One-third (⅓) of the net income shall be paid in annual or more frequent installments, preferably once every three months, to Ruth McKinnon Morgan so long as she lives.

(c) One-third (⅓) of the net income may be used or expended for the benefit of Carol Frances Gibson, the daughter of J. Lauder and Lucy Freeman Gibson, without having to make such payments through a guardian. The Trustee, in his sole discretion, may make such disbursements of this income as will best provide for the health, comfort, maintenance and education of Carol Frances Gibson so long as she lives; any income not so expended in any year may be accumulated for her needs in later years, and shall be held as a reserve fund for her benefit.

(d) After the death of any one of the beneficiaries, the deceased beneficiary's share of the income shall be held in a reserve fund, which at no time shall exceed the Grantor's original contribution of Thirty-Seven Thousand Five Hundred ($37,500.00) Dollars, and from which the Trustee, in his sole discretion, may make such distributions to or for the benefit of the surviving beneficiary or beneficiaries as their needs may suggest, or to the Morgan Foundation. All income in excess of the said reserve fund shall be accumulated, used for, or distributed to the grandchildren of the Grantor in the manner provided in paragraph (e) hereof, just as if no one of the beneficiaries hereinbefore named was then living.

(e) After the death of the survivor of the beneficiaries hereinbefore named, the net income, in the sole discretion of the Trustee, may be accumulated or used for the benefit of the grandchildren of the Grantor * * *. When the youngest of the Grantor's grandchildren attains the age of twenty-one (21) years, the trust shall terminate and the then trust estate shall be distributed, freed of all trust: * * *

The trustee through 1963 has paid $14,630.97 for the benefit of Carol Frances Gibson and has accumulated about $35,000 as a reserve for her later benefit. The beneficiary is a mentally retarded person who was about 7 years of age in 1955. She has to live in a home for retarded children. The trustee has paid for her maintenance in that home and for medical and dental bills, and clothing.

On December 30, 1958, petitioners created an irrevocable trust, hereinafter referred to as the 1958 trust. The trust agreement provided that "Up to and including December 31, 1978, the Trustees shall pay the entire net income each year" to the Morgan Charitable Trust. After 1978 the income is to be distributed to James L. Morgan and M. Morrison Morgan, sons of the petitioners, and the corpus is eventually to be distributed to their heirs. James L. Morgan and M. Morrison Morgan are the trustees.

On December 30, 1958, petitioners transferred by gift one-half (1,782 shares) of their combined class B nonvoting common stock of Edinburgh to the 1958 trust.

On January 2, 1959, petitioners made a similar gift of their remaining 1,782 shares of class B nonvoting common stock of Edinburgh to the 1958 trust.

The fair market value of the class B nonvoting stock of Edinburgh was $190 per share on December 30, 1958, and January 2, 1959. The fair market value of 1,782 shares of this stock was $338,580 at the time of each contribution.

The petitioners determined the present value of the 20-year income interest in the stock with respect to the income tax returns by the use of table II, Estate Tax Regs., sec. 20.2031–7, and with respect to the gift tax returns by the use of table II, Gift Tax Regs., sec. 25.2512–5. The date of gift, number of shares given, and the value per tables of the right to receive income are as follows:

| Date | Gift by— | Shares | Value per table |
|---|---|---|---|
| Dec. 30, 1958 | Edwin Morgan | 1,440 | $136,097.94 |
| | Elise Morgan | 342 | 32,323.26 |
| | Total | 1,782 | 168,421.20 |
| Jan. 2, 1959 | Edwin Morgan | 1,440 | 136,097.94 |
| | Elise Morgan | 342 | 32,323.26 |
| | Total | 1,782 | 168,421.20 |

The petitioners filed separate gift tax returns for the years 1958 and 1959, and each petitioner executed the consent of spouse to have the gifts made to third parties considered as having been made one-half by each.

In their gift tax returns for 1955, 1958, and 1959 the petitioners reported total gifts as follows:

| Year | Edwin | Elise |
|---|---|---|
| 1955 | $99,617.20 | $24,708.72 |
| 1958 | 169,290.00 | 169,290.00 |
| 1959 | 176,790.00 | 176,790.00 |

In her gift tax return for 1955 Elise claimed three exclusions of $3,000 each for the gift to the trust created in 1955. Prior to 1955 she had used $10,583.98 of her specific exemption. She claimed the further amount of $9,750 on her 1955 return. Respondent disallowed the exclusion claimed with respect to the gift for the benefit of Carol Frances Gibson. Elise elected to claim an additional specific exemption of $3,000.

In their gift tax returns for 1958 and 1959 each petitioner claimed for each year with reference to the 1958 trust charitable deductions in the amount of $81,210.60 and exclusions of $3,000.

The petitioners' joint income tax returns for 1958 and 1959 included the following items:

|  | 1958 | 1959 |
|---|---|---|
| Adjusted gross income | $261,535.03 | $186,114.55 |
| Contributions | 198,725.08 | 188,854.15 |
| Deduction for contributions | 78,460.51 | 55,095.86 |
| Contributions to Morgan Trust | 168,421.20 | 168,421.20 |

The trustees of the 1958 trust received no dividends until March 1960.

The value of the charitable beneficial interest in the 1958 trust was not ascertainable at the time of the gifts in 1958 or 1959.

The gift in trust in 1955 for the benefit of Carol Frances Gibson was not a gift of a future interest in property.

### OPINION

Petitioner Edwin Morgan created the Morgan Charitable Trust in 1949. The petitioners and their two adult sons were the trustees. In December 1958 the petitioners created another trust, naming their sons as trustees, and transferred to it shares of nonvoting common stock of Edinburgh, a corporation controlled by the petitioners. They transferred to this trust the remainder of their shares of nonvoting common stock in January 1959. The net income of the 1958 trust was to be paid to the Morgan Charitable Trust for 20 years and thereafter to the petitioners' sons or their heirs, with the remainder to their heirs. The petitioners filed gift tax returns for 1958 and 1959, claiming deductions for the value of the 20-year income interest as a gift to charity, and exclusions for each such gift, and on their income tax returns for those years also claimed deductions for these charitable contributions. The respondent disallowed the claimed exclusions and deductions and determined deficiencies in both income and gift taxes.

The exclusions claimed on the gift tax returns were disallowed on the ground that the gifts were too contingent to be susceptible of valuation. The amounts claimed on such returns as gifts to charity were disallowed for the same reason and the further reason that under the facts the charity may not receive the beneficial enjoyment of the interest transferred. The deductions claimed on the income tax returns for these gifts as charitable contributions were disallowed for the same reasons.

The respondent maintains that because the fiscal policies of Edinburgh are controlled by the donors and their family, there is no assurance that the 1958 trust will receive over the 20-year term an income such as to justify a present value on the date of the gifts of the amounts claimed, since the receipt of income is dependent upon the dividends declared by the corporation which is completely within the control of the petitioners.

Edinburgh was engaged in textile manufacturing and selling. The textile plant operations came to an end about 1955. It commenced yard mill operations about 1956 or 1957 which were carried on until 1960 or 1961. It started business with a capital stock of $50,000. It had substantial earnings and accumulated a large surplus. In 1955 a part of the surplus was capitalized and a stock dividend of nine shares for one was distributed. It paid dividends on preferred stock until that was retired in 1955, but paid no dividends from 1949 through 1959 on common stock except for $30 per share in 1952 and $100 per share in 1955 prior to the issue of additional stock and capitalization of $450,000 of earnings. In 1958 another $300,000 of retained earnings was capitalized, and noncumulative preferred, voting common, and nonvoting common stocks were issued. The nonvoting common stock issued to the petitioners, 99 percent of the issue, was the subject of the petitioners' gift to the 1958 trust. The voting common stock is held 99 percent by the petitioners, who control the corporation and the distribution of dividends upon any of the stocks. Although the trustees of the 1958 trust are commanded to pay all the net income of that trust to the Morgan Charitable Trust, the existence of any such income is entirely dependent upon payment of dividends by Edinburgh, which is a matter within the control of the petitioners.

The petitioners contend that the Morgan Charitable Trust has received and will receive all the net income from the 1958 trust. They say that dividends on the nonvoting stock have been declared and paid regularly, commencing in 1960, and that the petitioners intended by the gift to provide income for the charitable trust. They say that Edinburgh has changed its business from manufacturing to investment and development of industrial property for leasing. They suggest that, considering the personal holding company character of Edinburgh's present income, primarily dividends, interest, and rents, the surtax on undistributed personal holding company income under section 541 of the Internal Revenue Code of 1954 will be an impelling reason for distributing income of Edinburgh, in addition to the grantors' intention to provide income for that trust.

The respondent points out that the personal holding company surtax would not necessarily be applied in the case of Edinburgh because of the adjustments provided in computing undistributed personal

holding company income, such as for taxes, capital gains adjustment, and for charitable deductions, and rents when they constitute 50 percent or more of a corporation's gross income. Also, there is nothing to prevent the corporation's resuming textile operations.

The fact that the directors of Edinburgh have declared dividends regularly, beginning in 1960, is not material. The valuation of the gift is to be determined from the facts known in 1958 or 1959 when it was made. *Ithaca Trust Co.* v. *United States*, 279 U.S. 151 (1929). The facts at that time were that notwithstanding substantial earnings in every year except 1956 and a rapidly increasing surplus, dividends on common stock had been declared in only 2 of the last 11 years; the donors controlled the corporation; the trustees and remaindermen were members of the donor's family; and the trust instrument contained no provisions guaranteeing income to the charity. The donors can at any time deny any benefits to the charity by refraining from declaring dividends. The fact that dividends have been declared regularly while this case is pending does not prevent their cessation as soon as the case is decided.

The regulations applicable in the present situation clearly require the disallowance of the deductions claimed, both as to income tax and gift tax. Section 1.170–1(e), Income Tax Regs.,[2] describes an example where the assets placed in trust consist of stock in a corporation controlled by the donor, the trustees and remaindermen are members of the donor's family, and the trust instrument does not guarantee income to the charity. The deduction of a gift is not allowable under those facts. This is exactly the situation here present. Similar provisions are contained in section 25.2522(a)–2(b), Gift Tax Regs.

The petitioners recognize the similarity in the facts but contend that this provision of the regulations is an invalid enlargement of the statute. We are not persuaded by the argument. If this regulation had not been promulgated, we would have reached the same conclusion that the charity may not receive the beneficial enjoyment of the

---

[2] Sec. 1.170–1 Charitable, etc., contributions and gifts; allowance of deduction.

(e) *Transfers subject to a condition or a power.* If as of the date of a gift a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an interest passes to or is vested in charity on the date of the gift and the interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable on the date of the gift, the deduction is allowable. The deduction is not allowed in the case of a transfer in trust conveying a present interest in income if by reason of all the conditions and circumstances surrounding the transfer it appears that the charity may not receive the beneficial enjoyment of the interest. For example, assume that assets placed in trust consist of stock in a corporation the fiscal policies of which are controlled by the donor and his family, that the trustees and remaindermen are likewise members of the donor's family, and that the governing instrument contains no adequate guarantee of the requisite income to the charitable organization. Under such circumstances, no deduction will be allowed. * * *

interest. The regulation was published in March 1958, T.D. 6285, 1958–1 C.B. 127, prior to the creation of the trust. The trust instrument contains no provision, for example, requiring the trustees, if no dividends were received from Edinburgh, to exchange the stock for other income-producing securities or otherwise insuring an income to the trust.

While the gift tax provisions encourage bequests to charity by authorizing deductions for gifts for that purpose, they, as in the case of estate tax, offer no deductions for gifts or bequests which might never reach charity. See *Commissioner* v. *Sternberger's Estate*, 348 U.S. 187 (1955).

The petitioners contend that the value of the income interest is calculable by use of the tables provided in the applicable regulations. It is stipulated that the deductions claimed were calculated by use of such tables. But these are based upon an assumed 3½-percent return on the value of the property providing the income. Where the property may yield no income at all or the income is definitely determinable by other means, the tables are not applicable. *Hamm* v. *Commissioner*, 325 F. 2d 934 (C.A. 8, 1963), affirming a Memorandum Opinion of this Court. Here the respondent determined that the income interest is not susceptible of valuation. The petitioners have not shown this to be erroneous. The respondent was correct in disallowing the deductions and exclusions.

The second issue concerns the construction of the trust for the benefit of Carol Frances Gibson created in 1955 by Elise McKinnon Morgan.

The respondent disallowed the exclusion claimed for this gift upon the ground that the gift was a gift of a future interest against which no exclusion is to be allowed. Sec. 2503(b).[3] The gift was made to James L. Morgan as trustee for the beneficiary, a mentally retarded girl then about 7 years old. The trust provided that the net income "may be used or expended for the benefit of" the beneficiary "without having to make payments through a guardian" and that the trustee, "in his sole discretion, may make such disbursements of this income as will best provide for the health, comfort, maintenance and education" of the beneficiary during her life and that any income not so expended in any year might be accumulated for her later needs.

---

[3] SEC. 2503. TAXABLE GIFTS.

(b) EXCLUSIONS FROM GIFTS.—In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1955 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for purposes of subsection (a), be included in the total amount of gifts made during such year. * * *

The 1954 Code contains a provision relating to gifts for the benefit of minors, section 2503(c),[4] to the effect that such gifts are not to be considered gifts of a future interest in property if certain conditions are met. It is apparent that those conditions are not met in the present case. The provision requires the eventual passing of the property to the donee or his estate. The present trust provides a gift of income alone, and although such is regarded as a gift of property, *Arlean I. Herr*, 35 T.C. 732 (1961), affd. 303 F. 2d 780 (C.A. 3, 1962), there is no provision here for payment of unexpended amounts to the donee at age 21 or to her estate in case of her prior death.

Even though this gift may not satisfy the requirements of section 2503(c), it may still be a present interest under section 2503(b). See Gift Tax Regs., sec. 25.2503-4(c).[5] The respondent contends that it is a gift of a future interest in that the beneficiary does not have the right presently to use, possess, or enjoy the property, citing *Fondren* v. *Commissioner*, 324 U.S. 18 (1945).

In *Fondren* v. *Commissioner*, *supra*, the petitioner and her husband had created seven separate irrevocable trusts, each in favor of an infant grandchild. The trusts' stated purpose was "to provide for the personal comfort, support, maintenance and welfare" of the grandchildren. The trust instruments explicitly recognized that the parents of each child were so situated as to be fully able to provide for and educate him and that there was no reason to believe they would not continue to be able to do so until the child's majority. In each instance, therefore, income was to be accumulated and the corpus and accumulations to be paid to the beneficiary—25 percent at age 25, 33⅓ percent at age 30, and the remainder at age 35, *except* that, if it became necessary for the support, maintenance, and education of the beneficiary, "and in the judgment of the Trustee it is best to do so,"

---

[4] SEC. 2503. TAXABLE GIFTS.

    (c) TRANSFER FOR THE BENEFIT OF MINOR.—No part of a gift to an individual who has not attained the age of 21 years on the date of such transfer shall be considered a gift of a future interest in property for purposes of subsection (b) if the property and the income therefrom—

        (1) may be expended by, or for the benefit of, the donee before his attaining the age of 21 years, and

        (2) will to the extent not so expended—

            (A) pass to the donee on his attaining the age of 21 years, and

            (B) in the event the donee dies before attaining the age of 21 years, be payable to the estate of the donee or as he may appoint under a general power of appointment as defined in section 2514(c).

[5] Sec. 25.2503-4. Transfer for the benefit of a minor.

    (c) A gift to a minor which does not satisfy the requirements of section 2503(c) may be either a present or a future interest under the general rules of section 25.2503-3. Thus, for example, a transfer of property in trust with income required to be paid annually to a minor beneficiary and corpus to be distributed to him upon his attaining the age of 25 is a gift of a present interest with respect to the right to income but is a gift of a future interest with respect to the right to corpus.

the trustee was authorized to use all of the income and all of the corpus of the trust estate to accomplish these purposes. Under these facts, the Supreme Court held that the gifts to the trusts for the benefit of the minor grandchildren were of future interest within the meaning of the statute (sec. 504, Revenue Act of 1932) and the regulation (Regs. 79) which defined "future interests" as interests "which are limited to commence in use, possession, or enjoyment at some future date or time." The Court stated (pp. 20-21):

it is not enough to bring the exclusion into force that the donee has vested rights. In addition he must have the right presently to use, possess or enjoy the property. These terms are not words of art, * * * but connote the right to substantial present economic benefit. The question is of time, not when title vests, but when enjoyment begins. Whatever puts the barrier of a substantial period between the will of the beneficiary or donee now to enjoy what has been given him and that enjoyment makes the gift one of a future interest within the meaning of the regulation.

    \*        \*        \*        \*        \*        \*        \*

A fortiorari, if income is to be accumulated and paid over with the corpus at a later time, the entire gift is of a future interest,[3] although upon specified contingency some portion or all of the fund may be paid over earlier.[4] The contingency may be the exercise of the trustee's discretion, either absolute or contingent.[5] It may also be the need of the beneficiary, not existing when the trust or gift takes effect legally, but arising later upon anticipated though unexpected conditions, either to create a duty in the trustee to pay over or to permit him to do so in his discretion.[6]

    \*        \*        \*        \*        \*        \*        \*

Again, contingency of need in the future is not identical with the fact of need presently existing.

[Footnotes omitted.]

The Court further stated, however (p. 29):

It does not follow * * * that if the exemption does not apply in this case it can apply in no other made for a minor's benefit. Whenever provision is made for immediate application of the fund for such a purpose, whether of income or of corpus, the exemption applies.

The guiding principles outlined in the *Fondren* case were followed by the Supreme Court 6 months later in the case of *Commissioner* v. *Disston*, 325 U.S. 442 (1945), where the Court held that certain gifts in trust to minors were gifts of future interests both as to corpus and income. There the trust instrument provided that the minor should attain age 45 before becoming entitled to any portion of the corpus, except in case of emergency, and no present, certain, and continuous enjoyment was contemplated nor materialized. The trust instrument also directed the accumulation of net income until the minors reached 21, with further direction to the trustee to apply such income as might be necessary for the education, comfort, and support of the respective minor, but there was no showing that a steady flow of some ascertain-

able portion of income to the minor would be required. Here, again, as in *Fondren*, the Court indicated that a different result might be reached upon a showing that there was an immediate need. In reaching the conclusion it did, the Court stated:

In the absence of some indication from the face of the trust or surrounding circumstances that a steady flow of some ascertainable portion of income to the minor would be required, there is no basis for a conclusion that there is a gift of anything other than for the future.

The present case is clearly distinguishable on its facts from both the *Fondren* and *Disston* cases. In neither of those cases was there any showing of a present or immediate need for the use, possession, or enjoyment of any portion of the income or corpus of the trust estate for the benefit of the minor beneficiaries. In fact, in the *Fondren* case, the trust instrument explicitly recognized the improbability of such a present or immediate need. In the present case the beneficiary was a mentally retarded 7-year-old child required to live in a home for retarded children. There was not only an immediate need but a substantial amount of the income was actually expended for the comfort, support, and education of the beneficiary. In our opinion the language of the trust instrument did not and was not intended to give the trustee any discretion to withhold and accumulate the income entirely, but only gave him discretion to determine such payments as would best provide for the health, comfort, maintenance, and education of the beneficiary, and authorized him to apply the income for the benefit of the minor beneficiary without having to pay it through a guardian. The agreement provides that the trustee *"shall* apply and pay over the net income * * * in the following manner."* (Emphasis supplied.) Specific shares are directed to be paid to the two adult beneficiaries. These have been recognized by respondent as gifts of present interests. The use of the permissive word "may" in connection with the gift for the benefit of the minor beneficiary was, in our opinion, directed toward the manner of applying and paying over the income rather than the *time* of its use or enjoyment by the beneficiary. The provision in question is that one-third of the net income "may be used or expended for the benefit of Carol * * * without having to make such payments through a guardian," and that the trustee, "in his sole discretion, may make such disbursements of this income as will best provide for the health, comfort, maintenance and education of Carol Frances Gibson so long as she lives."

In our opinion, the language of the trust instrument, particularly when considered in connection with the surrounding circumstances, shows that a steady flow of some ascertainable portion of the income to the minor would be required. This being so, the gift for the benefit of Carol was of a present interest. *Fondren* and *Disston* do not

require a different holding but rather support this conclusion. See also *Commissioner* v. *Sharp*, 153 F. 2d 163 (C.A. 9, 1946); and *United States* v. *Baker*, 236 F. 2d 317 (C.A. 4, 1956).

*Commissioner* v. *Sharp*, *supra*, is particularly applicable here because of the similarity of its facts to those in the present case, and the court's analysis of the *Fondren* and *Disston* cases. There the taxpayer created an irrevocable trust in favor of a minor son incapable of managing the trust property himself. The pertinent facts are contained in the court's opinion, from which we quote as follows:

The most pertinent provision of the trust agreement, Article First, directs the trustee "to hold, manage, invest, and reinvest said trust estate, and to collect and receive rents, interest, income and dividends (hereinafter referred to as income) therefrom and after paying the proper charges against the same, to apply and pay over to the use and for the benefit of my son Donald Nichols Sharp the net income therefrom during his minority, and upon reaching majority to pay the net income to my said son Donald Nichols Sharp during his life. The trustee may make any payment of any income thus applicable to the use of my son Donald Nichols Sharp, during his minority, by paying the same to his mother, or guardian of his property, or corporation designated by the donor (without obligation to look to the proper application thereof by the person receiving it) or by expending it in such manner as the Trustee, in its discretion, believes will benefit my son. Any balance of income shall be accumulated until the arrival of my son Donald Nichols Sharp at majority, at which time the Trustee shall pay over the said accumulated income to my son Donald Nichols Sharp."

The minor son was incapable of taking over the management of the property. Accordingly, it was expedient to place the control in the hands of a trustee. In our opinion, the trustee had no right to withhold the income of the trust estate. The trustee was directed to pay over the net income during the beneficiary's minority. The discretion entrusted to the trustee was whether the payment should be made to the mother, guardian, or other person designated by the donor, or whether the trustee would expend the income in his judgment to benefit the minor son. The trustee had no discretion to determine if he would or would not pay over the income. The provision that the income would be accumulated was a reserve measure to make some provision for any excess income and was not intended as a limitation on the trustee's absolute duty to pay over the net income.

This case can be distinguished from the recent case of Fondren v. C.I.R., 324 U.S. 18, 65 S. Ct. 499, supra, where by the terms of the trusts and the facts surrounding the trusts none of the funds whether income or corpus could be applied immediately for the minor's enjoyment and use. This case can also be distinguished from C.I.R. v. Disston, 325 U.S. 442, 65 S. Ct. 1328, 158 A.L.R. 166, supra, where the Supreme Court upheld the Tax Court in disallowing the $5,000 exclusion because the taxpayer had not assumed the burden of showing that the value of the trust was other than a future interest. There was absence of evidence from the surrounding circumstances and face of the trust instrument itself to show that some part of the income or corpus would be required presently, and there was no basis for a conclusion that there was a gift of anything but a future interest.

If the income of the trust is to be accumulated and paid over with the corpus of the trust at a future date, the entire gift is one of future interests. Whenever the provision is made for immediate application of the funds for the minor's benefit whether of income or corpus, the exemption applies. The fund became available to the beneficiary here for his maintenance immediately upon consummation of the gift. He had at once the right of enjoyment. The present value of the right received from the income of the trust estate was stipulated to be in excess of $5,000. There was no gift tax deficiency.

In *United States* v. *Baker*, *supra*, the taxpayer made gifts in trust for the benefit of nine grandchildren whose ages ranged from 6 months to 6 years. The trust instruments provided that the properties:

shall be used for the support, education or benefit of * * * (name of beneficiary) in such amounts and manner and at such times as shall be in accordance with the needs and best interests of the beneficiary and as if the Trustees herein were holding the properties as Guardian of the beneficiary and making distribution of the properties in that capacity for the needs and benefit of the beneficiary.

In that case, the government conceded that an outright gift by a donor to the guardian of a minor would be the gift of a present and not a future interest under the terms of the statute. There, as in *Sharp*, the court distinguished the *Fondren* and *Disston* cases and held that the gifts in question were of present interests, stating, among other things:

Here the right of the beneficiaries to present enjoyment of both the corpus and the income is not different from what it would be if the gifts had been made directly to each of them, or to a guardian for their benefit. There is no magic in mere words. These gifts to a trustee, since they conferred on the beneficiaries the same right to present enjoyment which they would have had if the gifts had been made to a guardian for them, must be judged by the same standard as that applied to gifts made to a guardian.

See also Rev. Rul. 59–78, 1959–1 C.B. 471, wherein respondent held:

A gift in trust for a minor under terms requiring the trustee to use the property for the benefit of the donee as if held by him as guardian of the donee constitutes a gift of a present interest and is, therefore, entitled to the exclusion under section 1003(b)(3) of the Internal Revenue Code of 1939.

While the language of the trust instrument involved in the present case is not as precise as that employed in the *Baker* case, we think the intendment was the same, that the trustee was to serve not only as a trustee but in effect as a guardian. As the court stated in the *Baker* case, "There is no magic in mere words." The gift here should also be judged by the same standard as though it had been made to a guardian.

We hold that the gift for the benefit of Carol Frances Gibson was a gift of a present interest and not of a future interest in property.

*Decision will be entered under Rule 50.*