Lera H. STARK, Plaintiff,

v.

UNITED STATES of America, Defendant.

William P. STARK, Plaintiff,

v.

UNITED STATES of America, Defendant.

Nos. 19211–1, 19212–1.

United States District Court, W. D. Missouri, W. D.

Aug. 2, 1972.

Elmer B. Hodges, John I. Wassberg, Kansas City, Mo., for plaintiffs.

Bert C. Hurn, U. S. Atty., Kansas City, Mo., Eugene D. Silverman, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

### I.

JOHN W. OLIVER, District Judge.

These actions for refund of gift taxes and interest are before the Court on a fully stipulated record. The facts are stipulated by the parties in Standard Pretrial Order No. 2 and in the Stipulation of Uncontroverted Facts. Accordingly we make the following findings:

1. The jurisdictional facts contained in Part II of this Pretrial Order are incorporated herein.

2. On or about November 1, 1962, plaintiff William P. Stark, Sr., executed three separate but identical trust agreements naming his son, William P. Stark, Jr., as "Trustee." Each trust agreement differs only as to the name of the "primary beneficiary," each of whom was a grandchild of William P. Stark, Sr., and a child of William P. Stark, Jr.

3. The trusts were set up in the following names to reflect the name of each "primary beneficiary:"

| NAME | AGE AT CREATION OF TRUST |
|------|------|
| Krishma Marie Stark | 2 |
| Rahm Joseph Stark | 6 |
| William P. Stark, III | 8 |

4. During the calendar years 1962, 1963, and 1964 transfers were made to each of the three trusts of shares of stock in the Stark Lumber Company, (hereinafter to be referred to as the

"Company"), a closely-held family corporation, with the majority of the stock being held by William P. Stark, Sr. Since 1960 William P. Stark, Sr., has been Chairman of the Board and William P. Stark, Jr., has been President of the Company.

5. The Company was incorporated on or about March 23, 1946. Its stock has never been publicly traded nor offered for sale to the public. There have been no distributions of dividends by the Company (whether in cash, property, obligations or stock) since 1950.

6. During the calendar years 1962 and 1963 gifts of seven (7) shares of the Company's common stock were made to each of the three trusts by plaintiff William P. Stark, Sr., (plaintiff Lera H. Stark, consented to split the gifts with her husband during each of the calendar years 1962, 1963, and 1964). During the calendar year 1964 gifts of 60 shares (after a ten-for-one stock split) of common stock of the Company were made to each of the trusts by plaintiff William P. Stark, Sr., with consents by plaintiff Lera H. Stark.

7. The Company's financial statements reflect the following earnings per share during the periods in question:

| CALENDAR YEAR | EARNINGS PER SHARE |
|---|---|
| 1962 | $18.83 |
| 1963 | 3.59 * |
| 1964 | 7.66 * |

\* The earnings figures indicated above for the calendar years 1963 and 1964 have been adjusted for a ten-for-one stock split.

8. In computing their taxable gifts to the three trusts during the periods in question the plaintiffs excluded the "present value of the right" of the beneficiaries to receive income from the trust property. Consequently, the plaintiffs valued said "right" by applying the table provided in Section 25.2512–5(c) of the Treasury Regulations on Gift Tax.

9. The annual exclusions taken by the plaintiffs were disallowed by the Internal Revenue Service.

The parties have also agreed that the issues of law to be determined are, specifically:

1. Whether the plaintiffs by transferring in trust for the benefit of their three grandchildren a life interest in a closely-held stock with a record of non-issuance of dividends made gifts of a present interest (as contended by the plaintiffs) or of a future interest (as contended by the defendant).

2. If the Court determines that the donees' interests in the trust were present interests, were said interests susceptible of valuation at the time the gifts were made?

## II.

■ Section 2503(b) [Internal Revenue Code, 1954] permits an annual donee exclusion of the first $3,000 of gifts to any person during a calendar year provided that: (1) the gift is not one of a 'future interest,' and (2) is one susceptible of valuation. In order for the taxpayer to prevail, he must carry the burden of establishing both that the gift is not one of a "future interest" and that the gift is in fact susceptible of valuation.

We may assume, without deciding, that the gifts are not gifts of a future interest. In light of our conclusion that the taxpayers have not carried the burden of establishing that the gifts, regardless of how they may be defined, are in fact susceptible of valuation under Treasury Regulation § 25.2512–5(c), the defendant must prevail.

## III.

■ A taxpayer claiming an exclusion must assume the burden of showing that his claim is within that exclusion. Under familiar principles, a presumption of correctness attaches to a determination of the Commissioner. Commissioner of Internal Revenue v. Disston, 325 U.S. 442, 449, 65 S.Ct. 1328, 89 L.Ed. 1720 (1945); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348 (1934); Hamm v. Commissioner of Internal Revenue (8th

Cir., 1963) 325 F.2d 934, 937; Fischer v. Commissioner of Internal Revenue (3rd Cir., 1961) 288 F.2d 574, 576; and Kniep v. Commissioner of Internal Revenue (8th Cir., 1949) 172 F.2d 755, 758.

Commissioner of Internal Revenue v. Disston, *supra,* turned on the question of whether the gift was of a present or a future interest. *Disston* relied heavily upon Fondren v. Commissioner of Internal Revenue, 324 U.S. 18, 65 S.Ct. 499, 89 L.Ed. 668 (1945), which dealt with the same question. Both cases, however, made clear that it is necessary to consider the terms of a particular trust and the circumstances of each particular case in determining whether the taxpayer has carried the burden of establishing his right to an exclusion.

Plaintiffs recognize that the property given to the three trusts consisted solely of shares of capital stock of W. P. Stark Lumber Company, Inc., which paid dividends during the period from 1946 to 1950, but none thereafter. The taxpayers' claims to exclusion rested upon their dual contention "that these gifts of life income were gifts of present interests and that such interests should be valued according to the tables promulgated in Reg. § 25.2512–5(c)." Plaintiffs concede that the value of a gift of life income in stock can not be determined from the dividend history of that stock. Indeed, they state that "any assumption that income to be received during the lives of children from 2 to 10 years of age can be so prophesied is obviously absurd." [Pl. Br., p. 13]. They argue, however, "since it is impossible accurately to value life estates in income on the basis of known facts, the only fair method of determining such values is by the use of mortality tables and an assumed rate of interest." [Pl. Br., p. 14]. Plaintiffs argue "there is no other reasonable way to determine the values of such life estates" [Pl. Br., p. 15].

The implicit major premise of plaintiffs' argument is that Congress contemplated that some value must be assigned to every gift of life income in common stock and that if such value can not be reasonably ascertained from the factual circumstances of a particular case, all donors of such gifts are nevertheless to be considered entitled to establish one of the two prerequisites for an exclusion by a simple reference to the mortality tables. Plaintiffs argue that this Court should not place "its stamp of approval on . . . the contention of the defendant that the values of the life estates are unascertainable . . ." [Pl. Br., p. 19]. Indeed, in their reply brief the plaintiffs argue that "it is because of the impossibility of determining 'reasonable ascertainable values' of a life estate in trust income that the Commissioner, under statutory authority, has promulgated these actuarial tables . . . ." [Pl. Reply Brief, p. 3].

We think it obvious that the Congress did not authorize the Commissioner, by the promulgation of a regulation, to eliminate one of the two requirements that the parties agree a taxpayer must establish in order to be eligible to claim a gift tax exclusion. We are convinced that Congress intended that if proof of value of a particular gift could not be made in regard to the gift of a present, as distinguished from a future, interest, all taxpayers so situated simply would not be able to claim an exclusion. We reject the basic assumption implicit in plaintiffs' argument that all gifts of life estates are in fact susceptible of valuation.

Fischer v. Commissioner of Internal Revenue, *supra,* involved a case in which the government conceded that the "rights of Fischer's three daughters to receive the income from the trust were gifts of present interests." The government argued in that case, as it does in this, that the taxpayer was not entitled to an exclusion because their value "cannot be determined with reasonable certainty." That court concluded that "a gift of a present interest has not qualified for an annual exclusion where the value of the interest was not reasonably certain." We agree with *Fischer* and conclude that the principles there stated are applicable to this case.

Van Den Wymelenberg v. United States, (7th Cir., 1968) 397 F.2d 443, cert. den. 393 U.S. 953, 89 S.Ct. 377, 21 L.Ed.2d 364, involved another case in which the government conceded that the gifts were gifts of a present interest but contended that "they are not subject to the exclusion because their value was not ascertainable at the time the trust was created." That court followed *Fischer* and rejected the taxpayer's argument that the best evidence available to show the value of the income interests was the actual experience of the trust which, in that particular case, apparently showed a consistency in the amounts of income yielded and distributed each year. In rejecting that argument, the Court held that "if the value is not ascertainable then [at the time the gift is made], subsequent experience cannot render it so in retrospect."

In Elise McK. Morgan, 42 T.C. 1080 (1964), affirmed on the opinion of the Tax Court (4th Cir., 1965) 353 F.2d 209, the taxpayers contended, as do the taxpayers in this case, that "the value of the income interest is calculatable by use of the tables provided in the applicable regulation." The Tax Court, we believe properly, rejected that argument and held that "where the property may yield no income at all or if the income is definitely determinable by other means, the tables are not applicable." Hamm v. Commissioner of Internal Revenue, *supra*, was cited by the Tax Court in support of that principle. While we agree with the Third Circuit and the Tax Court's conclusion in *Elise McK. Morgan*, we have some doubt about whether Hamm v. C.I.R. fully supports the sentence we have quoted from the Tax Court's opinion. We agree, of course, that the implications of now Mr. Justice Blackmun's opinion in *Hamm* are consistent with what the Tax Court held. And specifically, we think the language of that opinion which states that "the taxpayer's argument here comes down to a demand for a formula" is particularly apropos.

That is what taxpayers' argument in this case comes down to. We conclude that the taxpayers in this case can not demand that the Commissioner use a formula which the Congress did not provide. This Court may not read a regulation in a manner which would substitute the use of a formula for the Congressionally required proof of value.

The taxpayers rely heavily upon Rosen v. Commissioner of Internal Revenue, (4th Cir., 1968) 397 F.2d 245. The distinction between *Rosen* and this case was recognized by Judge Craven when he stated in that case that "It is important to note that it has not been suggested to us that the 'income interest' was valueless." [Id at 247].

Certainly, the Fourth Circuit did not intimate that it intended by its decision in *Rosen* to overrule what it had earlier decided in *Elise McK. Morgan*, in which it affirmed the Tax Court on its opinion to which we have earlier made reference. We recognize, of course, that *Rosen* did state that "we think the taxpayers are entitled to resort to the actuary tables promulgated by the Commissioner himself." We are not convinced that Hipp v. United States, (W.D.S.C., 1962) 215 F.Supp. 222, which *Rosen* cited to support that proposition, can be said to support such a broad statement of law. *Hipp* did note with apparent approval the Tax Court's opinion in *Hamm* (later affirmed by the Eighth Circuit, as above noted), but distinguished the factual situations presented in *Hamm* and *Hipp*. That court quoted with apparent approval the Tax Court's conclusion that under the particular circumstances of that case it was not proper to utilize the tables, by stating that "In the *Hamm* case, the circumstances affecting the Corporation, United, made it unlikely that there would be any payment of dividends at all to the trusts." In regard to the factual circumstances of *Hipp*, the court stated "Here, there is every reason to believe that the dividends from Liberty Life stock will be available for gifts to charity."

If, as we have indicated, we are not correct in suggesting that both *Rosen* and *Hipp* are properly distinguishable on their particular facts, we indicate for purposes of appeal that we believe any broader construction of those cases is inconsistent with *Fischer* and the other cases upon which we rely and therefore should not be followed.

## IV.

We therefore find and conclude that the taxpayers have failed to establish that the Commissioner's decision is incorrect, in that they have failed to carry the burden of showing that the life interests were interests susceptible of valuation at the time the gifts were made.