SEYMOUR SEDER AND FRANCES SEDER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3053-71. Filed April 5, 1973.

*Carolyn J. Brown*, for the petitioners.
*Lewis M. Porter, Jr.*, for the respondent.

OPINION

SIMPSON, *Judge:* The respondent determined a deficiency of $2,558.99 in the petitioners' 1968 Federal income tax. The only issue for decision is whether a deduction is allowable for the contribution of an income interest to charity.

[2] S. Rept. No. 1881, 87th Cong., 2d Sess., 1962-3 C.B. 852-853.

All of the facts have been stipulated, and those facts are so found.

The petitioners, Seymour Seder and Frances Seder, are husband and wife and maintained their legal residence in Chicago, Ill., at the time their petition was filed in this case. They filed a joint Federal income tax return for the year 1968 with the district director of internal revenue, Chicago, Ill. The return was prepared by use of the cash receipts and disbursements method of accounting.

The Seymour M. Seder Trust (the trust) was an irrevocable trust created by Mr. Seder. On December 26, 1968, the petitioners transferred to the trust 1,400 shares of common stock in Condec Corp. (Condec). The fair market value of the 1,400 shares at the date of transfer was approximately $48,300.

Mr. Seder was one of the two trustees of the trust. Under the trust agreement, the trustees were given the power to sell trust property and to invest the trust assets in other property which, in the discretion of the trustees, was in the best interest of the beneficiaries. Additionally, the trustees were authorized to retain, for any period of time, any security of Condec without liability for loss to, or depreciation of, trust assets resulting from such retention.

Article II of the trust agreement provided that until December 31, 1971, the net income of the trust was to be paid to the Seymour and Frances Seder Fund (the fund). The fund was, at all times pertinent herein, a charitable organization qualifying under section 170(c) of the Internal Revenue Code of 1954.[1] After the 3-year period, the net income was to be paid to the petitioner Frances Seder for life, and then, for a specified period of time, to Mr. Seder's living children, or to the living descendants of his deceased children. The ultimate remaindermen were to be the descendants of the petitioners.

At all times pertinent herein, the common stock of Condec was publicly traded and was listed on the American Stock Exchange. At the time of the transfer to the trust, the petitioners owned approximately 14,900 shares of common stock in Condec, and did not own, either directly or indirectly, a sufficient number of shares to constitute control of the corporation. Mr. Seder had been a shareholder of Condec throughout the calendar year 1968.

Condec, which was incorporated in 1942, was a manufacturer of equipment. Its major product lines were industrial and residential valves; special purpose vehicles, power-generating equipment, and instruments for energy control and conversion; and production machinery for both plastics and tire and rubber companies. Condec also owned a controlling interest in a corporation which manufactured the Unimate industrial robot.

---

[1] All statutory references are to the Internal Revenue Code of 1954.

Since at least 1958, Condec maintained a policy of diversification and expansion. During the period 1958 through 1969, it acquired, directly or through a subsidiary, 13 corporations or their businesses and assets. Continued acquisition and diversification required the retention of earnings for use by the corporation. Such policy was enunciated in a prospectus dated January 25, 1967, which accompanied an issue of convertible subordinated debentures:

Common shares are entitled to dividends when and as declared by the Board of Directors out of any funds lawfully available therefor under the law of the State of New York, subject to the prior dividend and redemption rights of the Preferred Stock. The Company has not paid dividends on its Common Stock since 1957, and in view of its increased working capital needs and its plant expansion program, does not expect to pay cash dividends in the immediate future. * * *

A similar statement was made to shareholders of record in a proxy statement dated May 17, 1968, which accompanied notice of a special shareholder meeting required to approve a proposed merger.

A schedule showing Condec's earnings and dividends paid on common stock during the 15-year period ended July 31, 1969, illustrates Condec's dividend policy at the time of the transfer to the trust:

| Year ending July 31— | Net income | Number of common shares outstanding | Approximate earnings on common | Accumulated retained earnings | Dividend on common |
|---|---|---|---|---|---|
| 1955 | $902,108 | 1,150,000 | $0.78 | $1,384,254 | $0.20 |
| 1956 | 660,943 | 1,250,000 | 0.53 | 1,736,437 | 0.475 |
| 1957 | 241,711 | 1,250,000 | 0.19 | 1,757,185 | 0.25 |
| 1958 | 337,611 | 1,250,000 | 0.27 | 2,094,796 | None |
| 1959 | 40,276 | 1,258,731 | 0.03 | 2,135,072 | None |
| 1960 | 162,465 | 1,285,009 | 0.13 | 2,297,537 | None |
| 1961 | 221,484 | 1,318,104 | 0.17 | 2,482,084 | None |
| 1962 | 289,264 | 1,325,849 | 0.22 | 2,771,348 | None |
| 1963 | 406,588 | 1,325,849 | 0.31 | 3,177,936 | None |
| 1964 | 557,524 | 1,325,849 | 0.44 | 3,690,241 | None |
| 1965 | 841,000 | 1,336,599 | 0.63 | 4,584,000 | None |
| 1966 | 1,369,000 | 1,441,195 | 0.95 | 5,871,000 | None |
| 1967 | 2,037,000 | 1,488,895 | 1.41 | 7,805,000 | None |
| 1968 | 2,942,000 | 1,647,323 | 1.70 | 10,631,000 | None |
| 1969 | 3,177,000 | 1,824,103 | 1.45 | 13,311,000 | None |

At the time of the transfer of shares to the trust, and in each of the fiscal years 1969, 1970, and 1971, Condec maintained sizable amounts of cash, working capital (current assets less current liabilities), and retained earnings. However, substantial portions of the retained earnings were restricted by loan agreements, and less than 15 percent of the current assets were nonoperating liquid assets, such as cash and short-term securities. Condec's financial statements disclose that although working capital continued to expand through this period, such increase was largely accomplished through long-term borrowing and the issuance of new stock. The following schedule

shows a breakdown of the source of funds and increase or decrease in working capital for Condec's fiscal years 1967 through 1971:

| Source of funds | Year ended July 31— | | | | |
|---|---|---|---|---|---|
| | 1967 | 1968 | 1969 | 1970 | 1971 |
| Cash flow from operations | $2,575,000 | $5,063,000 | $5,314,000 | $6,446,000 | $5,086,000 |
| Long-term borrowings | 17,127,000 | 10,672,000 | 20,151,000 | 52,017,000 | |
| Issue of preferred and common stock | 2,693,000 | 11,414,000 | 3,413,000 | 5,059,000 | 26,000 |
| Disposals of property, plant, and equipment | 1,587,000 | 528,000 | 482,000 | 369,000 | 838,000 |
| Miscellaneous | 5,100,000 | | | | |
| Total funds | 29,082,000 | 27,677,000 | 29,360,000 | 63,891,000 | 5,950,000 |
| Less: Total application of funds | 19,637,000 | 25,672,000 | 21,342,000 | 48,654,000 | 39,936,000 |
| Increase (decrease) in working capital | 9,445,000 | 2,005,000 | 8,018,000 | 15,237,000 | (33,986,000) |

During such 5-year period, working capital was needed largely for retirement of existing long-term debts, expansion of property, plant, and equipment, and continuance of the acquisition program.

On their income tax return for 1968, the petitioners claimed a charitable deduction of $4,760.93, representing their computation of the value of a 3-year income interest in 1,400 shares of Condec common stock. Such value was determined by the application of Table II of section 20.2031–7(f) of the Estate Tax Regulations to the fair market value of the stock transferred.

In his notice of deficiency, the respondent determined that no deduction was allowable for the transfer of the 3-year income interest.

We must decide whether the petitioners are entitled to a deduction under section 170 by reason of the gift of the 3-year income interest to a charitable organization.

Section 170 allows a deduction for "any charitable contribution * * * payment of which is made within the taxable year." Section 1.170–1 (d)(1) of the Income Tax Regulations provides that "A deduction may be allowed for a contribution of an interest in the income from property" and that such interest "shall be valued according to the tables" set forth in paragraph (f) of section 20.2031–7, Estate Tax Regs. However, section 1.170–1(e) of the Income Tax Regulations, in pertinent part, denies a deduction "in the case of a transfer in trust conveying a present interest in income if by reason of all the conditions and circumstances surrounding the transfer it appears that the charity may not receive the beneficial enjoyment of the interest."

In the first place, the petitioners assert that section 1.170–1(d)(1) of the Income Tax Regulations is mandatory and requires the use of the actuarial tables to determine the value of a gift of an income interest, regardless of the circumstances surrounding the gift. However,

their reading of the regulations is too narrow. Although the heading of paragraph (e) of that section of the regulations states "Transfers subject to a condition or a power," a reading of the entire paragraph indicates clearly that it was intended to apply to a gift of an interest in income and to limit the provisions set forth in paragraph (d) of the section. See *James L. Darling*, 43 T.C. 520, 530-531 (1965). The third, fourth, fifth, and sixth sentences explicitly deal with such gifts and include illustrations of the rule set forth in the third sentence; namely, a deduction is not allowable if the circumstances indicate that charity may not benefit from the gift. Moreover, the courts have consistently examined the surrounding circumstances to determine whether a deduction is allowable for a claimed gift of an income interest to charity, even when the courts have allowed such deduction. *United States* v. *Gates*, 376 F. 2d 65, 75-76 (C.A. 10, 1967); *Elise McK. Morgan*, 42 T.C. 1080, 1088 (1964), affirmed per curiam 353 F. 2d 209 (C.A. 4, 1965), certiorari denied 384 U.S. 918 (1966); *Hipp* v. *United States*, 215 F. Supp. 222 (W.D.S.C. 1962).

In the alternative, the petitioners argue that even if the surrounding circumstances are considered, they are entitled to a deduction under section 170 as a result of the contribution of the interest in income to charity computed by application of the actuarial table. They assert that, irrespective of what Condec may have done in the past, it could change its policy as to the payment of dividends at any time and that it had substantial earnings and working capital; thus, it had both the legal and practical ability to pay dividends. They point out that they had no control over the dividend policy of Condec. They also argue that since the trustees had the power to sell the Condec stock, they could exercise that power and invest the proceeds in income-producing stock, if Condec continued not to pay dividends. Finally, they contend that because the value of the income interest cannot be ascertained with certainty, they are entitled to use the actuarial table to compute such value.

When a deduction is claimed for a contribution to charity, it must be shown that charity is likely to receive the beneficial use of the contribution. *Commissioner* v. *Sternberger's Estate*, 348 U.S. 187 (1955); *James L. Darling, supra* at 533; *Elise McK. Morgan, supra*. Otherwise, "The result might well be not so much to encourage gifts inuring to the benefit of charity as to encourage the writing of conditions into bequests which would assure charitable tax deductions without assuring benefits to charity." *Commissioner* v. *Sternberger's Estate, supra* at 198. If the interest given to charity is contingent, a deduction is not allowable if there is more than a negligible possibility that charity will not receive the beneficial use of the property. Sec. 1.170-1 (e), In-

come Tax Regs.; *Commissioner* v. *Sternberger's Estate, supra* at 194; *Davison* v. *Commissioner*, 81 F. 2d 16, 17 (C.A. 2, 1936), affirming 31 B.T.A. 101 (1934) ; *Banker's Trust Co.* v. *United States*, 190 F. Supp. 671, 675 (S.D.N.Y. 1960), affirmed per curiam 299 F. 2d 936 (C.A. 2, 1962). For a deduction to be allowable, it need not be shown that charity is certain to receive the benefit. *Glenn E. Edgar*, 56 T.C. 717, 752 (1971) ; cf. *Kate Froman Trust*, 58 T.C. 512, 515 (1972). Rather, it must be shown that the charity is likely to benefit. See *United States* v. *Gates, supra; Elise McK. Morgan, supra.* The petitioners have the burden of proof. Rule 32, Tax Court Rules of Practice; *James L. Darling, supra* at 538.

In the 11-year period preceding the petitioners' transfer of stock to the trust, Condec retained its earnings for purposes of growth and diversification. Despite the presence of substantial earnings in this period, no dividends were paid. In both the 1967 prospectus and the 1968 proxy statement, the management of Condec made clear that no dividends had been paid recently, and because of present and projected operating needs, none were to be expected in the immediate future. Thus, at the time of the transfer, Condec's policy was clear— it did not intend to pay dividends.

Although the corporation's dividend-paying policy might change in the future, there was no reason, at the time of the transfer, to expect a change—in fact, the circumstances indicated that a change was unlikely. In the fiscal year ending July 31, 1968, and also in the fiscal years ending in 1969, 1970, and 1971, cash and short-term securities made up less than 15 percent of the current assets. Therefore, although the corporation's books showed sizable amounts of working capital, only a small part was available for the payment of dividends. At the same time, most of its retained earnings were restricted by long-term loan agreements. Inasmuch as the circumstances herein clearly indicate that Condec was unlikely to begin paying dividends in the 3-year period, the fact that the donors lacked the power to control Condec is immaterial. Compare *Elise McK. Morgan, supra.*

Similarly, although the trustees had the power to sell the Condec stock and to invest the proceeds in income-producing assets, they were not required to do so. The trust instrument contained no express requirement that they sell the Condec stock if it failed to produce satisfactory income; and despite their fiduciary responsibilities, there was no implied requirement for them to convert such stock into income-producing property. The provision giving the trustees explicit power to retain the Condec stock, and protecting them against any liability if they did so, made clear that they had no duty to sell such stock. Moreover, Mr. Seder was one of the trustees, and the stock could not be sold without his acquiescence. His wife and children were likely

to benefit by Condec's policy of retention of earnings for expansion and acquisition of new businesses; thus, he had an interest in retaining the stock despite its failure to pay dividends during the 3-year period when the income of the trust was given to charity. Under these circumstances, the mere existence of the power to sell the Condec stock utterly fails to indicate that the trustees were likely to do so if it continued its policy of not paying dividends. See *Elise McK. Morgan*, 42 T.C. at 1088.

The petitioners rely on the decision by the Fourth Circuit in *Rosen* v. *Commissioner*, 397 F. 2d 245 (C.A. 4, 1968), reversing 48 T.C. 834 (1967), but the issue and facts in that case are significantly different from those in the case before us. In *Rosen*, the settlors established a trust providing that the income should be paid to their children and the corpus should be distributed to the children in the future. The corpus consisted of stock with respect to which dividends had not been paid, and for that reason, the respondent took the position that the income interests could not be valued and that therefore the settlors were not entitled to the annual $3,000 gift tax exclusion under section 2503(b) with respect to such interests. The circuit court found respondent's position to be anomalous—on the one hand, he took the position that the donee-children received a valuable present interest in the income of the trusts which was subject to the gift tax, but, on the other hand, he asserted that such interests could not be valued. The children were to receive the property at some time, and the court held that although the gifts of the future interests were not excludable, the donors were entitled to compute the value of the present interests by use of the actuarial tables and to exclude the permitted amounts. In the present case, however, the petitioners are seeking a deduction for a claimed gift to charity. Here, the donee-charity received merely the present interest in income for a 3-year period and did not receive any future interest, and there is substantial doubt that the donee-charity will in fact receive any benefit by reason of the claimed gift. There has been no concession by the respondent that charity received a valuable interest, and section 1.170–1(e) of the Income Tax Regulations denies a deduction for a contribution to charity when the conditions and circumstances indicate that charity is not likely to benefit from the gift. Such regulations were approved and applied in *Elise McK. Morgan, supra* at 1080, which was affirmed by the Fourth Circuit (353 F. 2d 209). Accordingly, the holding of the Fourth Circuit in *Rosen* is inapplicable here.

The petitioners' reliance upon *Hipp* v. *United States*, 215 F. Supp. 222 (W.D.S.C. 1962), is also misplaced. In that case, there was no doubt that the charity would receive beneficial enjoyment of its income interest, and the sole issue before the court involved valuation

of such interest. The court found that there was no way of valuing the interest with certainty but that the actuarial tables provided a reasonable means for valuing such interest. In this case, however, it is unlikely that charity will receive any income during the 3-year period, and there is no basis for concluding that the actuarial tables provide a reasonable means for valuing the claimed gift to charity.

In view of the substantial doubt as to whether any income will be paid to charity by the trust during the 3-year period, we hold that the petitioners are not entitled to a deduction under section 170 by reason of the terms of the trust.

*Decision will be entered for the respondent.*